## Higginbothom, Admr. v. Higginbothom.

(Decided October 19, 1917.)

### Appeal from Garrard Circuit Court.

1. Statutes—Construction.—Under section 460 of the Kentucky Statutes the words and phrases of a statute are to be construed and

understood according to the common usage of language; but technical words and phrases, and such others as may have acquired a technical and appropriate meaning in the law are to be construed and understood according to such meaning.

2. Statutes—Construction.—The fixed technical meaning of a word must be given to it when used in a statute, unless the context shows it means to use it in a different sense; whilst words of common use are to be understood in their plain, ordinary and genuine signification as applied to the subject matter of the enactment.

3. Descent and Distribution—Heirs.—At common law the "heir" or "heir-at-law" is he who is born in lawful wedlock, and upon whom the law casts an estate in lands, tenements or hereditaments, immediately upon the death of his ancestor.

4. Descent and Distribution—Heirs.—The person who is appointed by the law to take the estate is called the heir; technically one who takes property under a will is not an heir. In its legal sense the word "heir" as used at common law does not include a widow on whom the law casts an estate in dower, or a husband on whom the law casts an estate by curtesy, for these are considered new estates, arising out of marriage and its incidents, and carved out of the fee, not as a continuance or devolution of the fee itself.

5. Descent and Distribution—Heirs—Widow Not Heir of Deceased Husband.—The widow is not an heir of her deceased husband within the meaning of section 3885 of the Kentucky Statutes which authorizes the personal representative, or heirs at law to erect an appropriate memorial tablet over the grave of her deceased husband at the cost of his estate.

LEWIS L. WALKER for appellant.

R. H. TOMLINSON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Section 3885 of the Kentucky Statutes reads as follows:

"The personal representative, or heirs at law, may cause to be erected over the grave of the deceased an appropriate memorial tablet, the cost of which shall be allowed as funeral expenses on the settlement of the estate."

John M. Higginbothom, of Garrard county, died in 1902, leaving a widow, the appellee, Emma Higginbothom, surviving him. He left no children or descendants of children. His net estate approximated $50,000.00.

In 1916, the widow bought a lot in the cemetery for $85.00, and erected a monument thereon, to the memory of her husband, at a cost of $1,600.00. She instituted this action against the administrator of her husband's estate

to recover the cost of the monument; and having obtained a judgment for $1,600.00 to be paid out of assets in the hands of the administrator, he appeals.

The right to erect an appropriate memorial tablet at the cost of the estate being given, by the statute, *supra,* to the personal representative, or the heirs at law, the widow cannot exercise that right unless she is an heir at law.

Section 460 of the Kentucky Statutes, relating to the construction of statutes, reads as follows:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, is not to apply to this revision; on the contrary, its provisions are to be liberally construed with a view to promote its objects. All words and phrases shall be construed and understood according to the common and approved usage of language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such meaning."

While the term "heir," or "heir at law," is sometimes given quite a liberal meaning in the construction of wills and deeds for the purpose of effectuating the intention of the testator or grantor, otherwise clearly expressed, and in insurance policies, it is not believed that, in view of section 460, this liberal rule of construction can properly be applied in the interpretation of statutes.

The first and most elementary rule in the construction of a statute is, that it is to be assumed that the words and phrases thereof are used in their technical meaning, if they have acquired one. It is said that the fixed technical meaning of a word must be given to it when used in a statute, unless the context shows an intention to use it in a different sense; whilst words of common use are to be understood in their natural, plain, ordinary and genuine signification as applied to the subject matter of the enactment. Endlich "On the Interpretation of Statutes," section 2. Upon subjects relating to the courts and legal proceedings the legislature will be presumed to speak technically, unless, from the statute itself, a different use of the language may be apparent. *Ib.,* sections 74 and 75.

Under the Roman civil law the term "heir" applies to all persons who are called to the succession, whether by the act of the party, or by operation of law. The person who is created universal successor by will is called

the testamentary heir; and the next of kin by blood is, in cases of intestacy, called the heir at law, or heir by intestacy. 1 Brown Civ. Law 344; Story, Confl. Laws, section 508; 21 Cyc. 416.

But the term "heir," as used in the common law, has a very different signification. At common law the heir or heir at law is he who is born or begotten in lawful wedlock, and upon whom the law casts the estate in lands, tenements, or hereditaments immediately upon the death of his ancestor. Bouv. Dict. The person who is appointed by the law to take the estate is called the heir. Technically, one who takes property under a will is not an heir. Kent v. Owensboro Deposit Bank, 90 Ky. 70; 21 Cyc. 415. And, the word "heir" is also confined to those persons who take the real estate. Properly speaking, one cannot be an heir to personal property. Bacon Law Tracts, 128; Co. Litt. 191a, note 77; Tiedeman's Real Prop., section 663.

In Kent v. Owensboro Deposit Bank, *supra,* the court said:

"Those who are designated as successors to the realty are called heirs; those who are designated as successors to the personalty are called distributees."

This is the thoroughly established technical meaning of the term in English law.

By the common law, neither the executor (unless expressly authorized by the will), nor the administrator has any right except to the personal estate of the deceased; whereas, the heir under the Roman law is authorized to administer both the personal and real estate. So, it has become universal that when the common law speaks of "heirs" or "heirs-at-law" it uses these terms in their technical sense; the widow is not in contemplation.

In defining the term "heir" in its legal sense, the Century Dictionary says:

"In this sense the word as used at common law does not include a widow on whom the law casts an estate in dower, or a husband on whom the law casts an estate by the curtesy, for these are considered new estates, arising out of marriage and its incidents, and carved out of the fee, not as a continuation or devolution of the fee itself. If there be dower or curtesy the heir is that person who takes immediate title to the fee, subject to such life estate."

The doctrine thus announced that a widow is not an "heir" or "heir at law" of her husband, and that a

husband is not the heir of his wife, is sustained by the great weight of authority. ·See Golder v. Golder, 95 Me. 250; Houghton v. Hughes, 108 Me. 233, Ann ·Cas. 1913A 1287; Brown v. Ramsey, 74 Ga. 214; *In Re* Raleigh's Estate, 206 Pa. 451; Wells' Guardian v. ·Moore, 16 Mo. 481; Miller v. Finnegan, 26 Fla. 29; Blackman v. Wadsworth, 65 Iowa 80; Henderson v. Henderson, 46 N. C. 223; Smith v. Winsor, 239 Ill. 567; Bayley v. Lawrence, 118 N. Y. Supp. 286, 133 App. Div. 888; Proctor v. Clark, 154 Mass. 45, 12 L. R. A. 721, with note; Gardner v. Skinner, 195 Mass. 164; McNutt v. McNutt, 116 Ind. 564, 2 L. R. A. 372; Noble v. Seattle, 19 Wash. 133, 40 L. R. A. 822.

In Harrell v. Osborne, 12 Ky. L. R. 686, the testator left a legacy of one thousand dollars to his sister Ellen, to be held as her separate estate during her life, and then ''to pass to her heirs at law as if by descent from her.'' In writing the opinion for the Superior Court denying the claim of Ellen's husband, as heir, Judge Barbour said: ''The husband takes the deceased wife's personalty as distributee under the statute, and not as the 'heir' at law, or by descent. The statute defines who are 'heirs' and who are 'distributees.' It may be conceded that in construing wills the meaning fixed by the statute to the words is not always conclusive, and that, in ascertaining the intent of the testator in the use of words it is proper to consider the terms with reference to the subject matter, which may control and give to the words a meaning different from their strict and primary meaning. And, in thus construing wills the courts have, in many cases, held that the word 'heirs' meant 'distributees.'

''But the trouble with the appellant's contention is, that the consideration of the context does not aid it; on the other hand, when the whole language of the will is considered it seems clear that the testator used the expression 'to pass to the heirs at law, as if by descent from her,' in its strict and primary, or rather, legal sense, and with the intention of excluding the husband.

''He devises the money to the wife to be held in trust for her and as her separate estate, free from the control of her husband, the income to be paid to her during her life, and when she dies the principal to pass to her heirs at law, as if by descent from her.

''In other words, the will simply leaves to her the income from the principal during her life, the remainder being devised to her 'heirs'; and, as the husband is not the 'heir' of the wife, he was not entitled to the money.''

Shepherd v. Sharp, 1 Ky. L. R. 418, 10 Ky. Op. 885, is to the same effect.

It is only when the term ''heir'' used in wills or like papers, is qualified by its connection with other sufficient words, that it will be given a non-technical meaning, so as to include the wife, or husband, as an heir. Williamson v. Williamson, 18 B. M. 370; Allen v. Vanmeter, 1 Met. 276. Thus, where the term ''heirs'' is used, not *simplicter*, but in connection with other words, or where there is an express reference to the statute of distributions, and the widow is capable of taking thereunder, she will take by virtue of the term ''heirs,'' or like words, when used in a bequest. Black v. Jones, 264 Ill. 548, Ann. Cas. 1915 D, 1173, with note.

When so used with reference to personal estate, the word ''heirs'' is generally construed as meaning distributees, or all those who, under the law, take the personal estate as next of kin, or by reason of their relation to the deceased. Erol's Admr. v. Erol, 9 Ky. Op. 739.

This rule that the wife is not an heir of her husband and will not take under a devise to his ''heirs'' when that term stands alone, and is, consequently, used in its technical sense, has been fully recognized and applied by this court. In Clay v. Clay, 2 Duv. 296, Henry Clay bequeathed the residual portion of his personalty to his sons, Thomas H. and James B. Clay, with power of appointment, by will, in each of them, as to his share; ''and, in default of such will, to their respective heirs according to the Kentucky statute of distributions.'' James B. Clay having died intestate, the court was called upon to decide whether his widow was entitled to a distributal portion of the residual personalty.

After noting the fact that the statutes of descent and distributions were separate enactments, and that it would be presumed Mr. Clay knew the essential difference between the descent of real estate, according to the statute of descents, and the distribution of personal estate according to the statute of distribution, the court said:

''The term 'heirs,' in a will, should be interpreted according to the subject matter, when there is no other clue to its interpretation. If the subject be realty, the term should be understood in its technical import; and if the subject be personalty, the same term should be held as importing distributees or successors. If this be so, then, had the testator said only that, on the prescribed contin-

gency, the fund should go to J. B. Clay's 'heirs,' it would still be distributable, not as real, but as personal estate. This seems to us to be the only consistent or rational interpretation of the testator's intent, and is, moreover, fortified by abundant and uncontradicted authority, as shown and illustrated in 4th Kent's Com., p. 536, and 2nd Williams on Exrs., p. 727, and the cases therein cited. And, that such was the testator's purpose is, apparently, made conclusive by his adding 'according to the Kentucky statute of distributions.'

"The successors to personal estate cannot take as heirs in the technical sense. And, it would be inconsistent to suppose that the testator meant that the persons among whom the fund was to be distributed should be those of J. B. Clay's blood, who, alone, would be his heirs if the estate had been real, but should nevertheless take, according to the statute of distributions, thereby excluding the widow, who is not such an heir. Had such been his meaning, he would, more concisely and much less ambiguously, have said only that the fund should go to J. B. Clay's children, who are his only technical heirs. Why, then, did he use the word 'heirs,' and add 'according to the Kentucky statute of distributions?' Only, as we think, because he intended that the fund should be distributed, as that law would distribute it, among those who, in the popular sense, are the heirs of personalty. And, there being in the technical sense, no heirs of personal estate, that term, in the legatory clause we have quoted, was apparently, used in its popular sense as synonymous with the distributees or successors.

"We are of the opinion that the only consistent or maintainable construction is, that the testator intended that this legacy should be distributed among the persons designated by the statute of distributions, and in the proportions thereby prescribed. And that, consequently, J. B. Clay's widow, now appellee, is entitled to one-third of the fund, and her children, the appellants, to the residue." See also Johnson v. Jacob, 11 Bush 646, to the same effect.

Lee v. Belknap, 163 Ky. 431, follows the rule laid down in Clay v. Clay, *supra,* and holds that the husband was an "heir" of his wife under an agreement that the wife's trustee should hold certain specified securities and personal property for her, with powers of revocation and disposition by will reserved to her; and, in case of her death without having exercised either power, the prop-

erty should pass absolutely "to those persons who under the present statutes of descent in Kentucky would be the heirs at law" of the wife.

The general expression in the opinion to the effect that all persons, who, at the death of the donor intestate would come into a part of her estate under the laws of Kentucky, should be considered an heir, is to be taken in connection with the case then before the court, which fell within the rule announced in Clay v. Clay, *supra,* which was properly cited in support of the conclusion there reached. If the contract or agreement between Mrs. Lee and her trustee had merely provided that the personalty held in trust, should, under the contingency that happened, pass to her "heirs," her husband under the rule above announced, would not have taken as an "heir" of his wife. But when the contract, testamentary in its nature, declared that the personalty should pass "to those persons who, under the present statutes of descent in Kentucky would be the heirs at law" of Mrs. Lee, the case fell within the extended rule, applied in the construction of testamentary papers, which declares that the additional words of reference to the statute made the husband a distributee and entitled as such to one-half of his wife's surplus personal estate. That construction was necessary in order to carry out the clearly expressed wish of the wife, in that case. But, in the construction of statutes, as heretofore stated, no such rule applies. In enacting a statute, the legislature lays down a general rule of conduct; and, in using technical terms it uses them in their technical sense. The statute above quoted expressly provides this rule for the interpretation of statutes. It is easily apparent that the rule for the construction of wills, which makes the ascertainment of the intention of the testator the chief purpose of the court has little application in the construction of statutes. This is especially true in the light of section 460 of the Kentucky Statutes, which deals directly with the subject, and lays down a rule which is plain in its meaning. It follows, therefore, that the widow of John Higginbotham was not his heir within the meaning of section 3885 of the Kentucky Statutes; and, consequently, it conferred upon her no authority to erect the monument in question at the expense of her husband's estate.

The judgment is reversed, and the action is remanded with instructions to the circuit court to dismiss the petition.