## Bohannon v. City óf Louisville, et al.

(Decided December 16, 1921.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

Schools and School Districts—School Improvement Bonds—Elections.—A city of the first class, which issues "School Improvement Bonds" in the sum of one million dollars, by virtue of chapter 90, Session Acts, 1912, does not exhaust its power under that statute to make an additional issue of bonds, not in excess of one million dollars in amount, whenever the board of education deems it necessary to purchase sites, erect school houses, and enlarge the school yards for the proper accommodation of the pupil children, but, an election upon the question of an issue of bonds must be held at a regular municipal election.

DAVIS, PAGE & BROWNING for appellant.

ARTHUR M. RUTLEDGE and DAVIS W. EDWARDS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Affirming.

The single question for decision is whether, under the act of the General Assembly of March 15, 1912, which is chapter 90, Session Acts, 1912, the city of Louisville is authorized to incur a bonded indebtedness of one million dollars, to be expended in the purchase of sites for school houses, and the erection of school houses for the high schools and other schools, and to purchase land for the enlargement of the existing school yards, in addition to a similar bonded indebtedness of one million dollars, which was contracted by virtue of that statute in the year 1913.

The facts from which the controversy arises are that in the year 1913, the board of education made the certification to the general council of the city, necessary under the statute to authorize the general council to adopt an ordinance submitting to the voters, at the regular municipal election, the question whether the city should incur an indebtedness of one million dollars, by the issue of bonds therefor, for the purposes set out in the statute, and the ordinance adopted by the general council complied in all respects with the requirements of the statute, and at the election, the proposed issue of the bonds was approved by the requisite number of the voters, voting at the election and in pursuance to such direction, the city issued the bonds and is now annually paying a tax sufficient to pay the interest on the bonds, and to liquidate them at their maturity.

In 1921 the board of education again deemed it necessary for the proper accommodation of the schools to purchase other sites for school houses, and to erect houses for the high schools and other schools, and to purchase lands for the enlargement of the present school yards, and the annual funds from other sources being insufficient for such purpose, were of the opinion that a bond issue was necessary to obtain the necessary funds therefor, and it made an estimate of the amount of money required therefor and certified to the general council that an election, upon the question of whether bonds should be issued in the sum of one million dollars, should be held, and likewise the purposes to which the money obtained, from such bonds should be applied, together with the estimate of the probable amount of money required, and the fact that the annual funds raised from other sources were insufficient, and that it deemed an issue of bonds necessary therefor. In pursuance to this certification, the general council adopted the necessary ordinance submitting the question of the proposed bond issue to the voters, at the regular municipal election held in November, 1921. The ordinance provided for all of the requirements designated by the statute. The requisite proportion of the voters, voting at the election, approved the issue of the bonds, and the incurrence of the additional indebtedness by the city, for the purposes designated and as specified by the ordinance. Pursuant to this direction of the voters, the authorities of the city were proposing to proceed to issue bonds, when the appellant sought by this action to restrain them from so doing, upon the

ground that the city, by the bond issue of 1913, had exhausted its power to become indebted by a bond issue as provided in the statute and for the purpose there mentioned, and hence, was unauthorized to further obligate itself on that account.    The circuit court sustained a general demurrer to the petition and dismissed the action, and hence this appeal.

To determine the soundness of the judgment, a construction of the statute, with reference to the subject, is necessary to be made.    The statute so far as is necessary to be quoted, is as follows:

"An Act to amend the school laws of cities of the first class.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"1.    That in cities of the first class, whenever the board of education shall deem it necessary for the proper accommodation of the schools of such city, to purchase a site or sites, or to erect school houses for the high schools or for the other schools, or to purchase lands for the enlargement of existing school yards, or for any or all these purposes, and the annual funds raised from other sources are not sufficient to accomplish said purpose or purposes, and it shall deem a bond issue to be necessary therefor, said board shall make a careful estimate of the probable amount of money required for such purpose or purposes, and it shall certify to the general council of said city the fact that an election for an issue of bonds for school improvements should be held, together with the amount of money for which bonds shall be issued, and the purpose or purposes to which the proceeds thereof shall be applied.    It shall thereupon be the duty of the general council to adopt an ordinance submitting to the qualified voters of the city, at the next regular municipal election, the question whether bonds of the city to the amount specified, shall be issued for school improvement purposes. The bonds so issued shall be designated as 'School Improvement Bonds,' and the ordinance shall provide the date and maturity of such bonds, the rate of interest they shall bear, and the total amount to be issued; and the ordinance shall, also, contain the necessary details in reference to the execution and delivery of said bonds, their denomination, coupons to be annexed, tax to be levied to pay the interest, and a sinking fund to retire such bonds at maturity.    No bond issue shall ever be for an

amount exceeding the sum of one million dollars. The question to be submitted shall be so framed that the voter may by his vote answer for or against the issue of bonds.''

To authorize a municipality to create an indebtedness by an issue of bonds, the power to do so must, of course, be clear, and whether the power has been given must be ascertained from the manifest intention of the legislature in making the enactment, from which the power is to be derived, and it is elementary to say that the statute from which the power is derived, is the intention of the legislature, and the duty of the court is to ascertain that intention and to give effect to it. Western & Southern Life Insurance Co. v. Weber, 183 Ky. 32; Baker v. Commonwealth, 181 Ky. 437; Felts v. Edwards, 181 Ky. 287; Adams v. Greene, 182 Ky. 504. The best means, in most instances, to ascertain the intention of the legislature, is to look to the language made use of by it in the statute, Grimes v. Central Life Insurance Co., 172 Ky. 18, but no intention must be read into it which is not justified by the language used. Western & Southern Life Insurance Co. v. Weber, *supra*. Words of common use are to be understood in their ordinary significance when applied to the subject matter of legislation. Higginbothem v. Higginbothem, 177 Ky. 271. The purpose of the legislature in enacting the statute may be considered in its construction, as well as the consequences of its enactment. Felts v. Edwards, *supra*. With these rules in contemplation, it is clear that the purpose which the legislature had in view in enacting this statute was to provide a means by which cities of the first class could provide the pupil children of the city with sufficient accommodations—that is with houses sufficiently commodious for their needs, in which the schools could be kept, and grounds around them of sufficient dimensions to meet the demands of modern day opinion, of a majority at least, for the recreation of the children and probably for their engagement in athletic exercises which many persons, engaged in the promotion of education, seem to think are necessary to their ability to acquire learning, and at least is conceded by all to be necessary to their good health. It is not to be supposed that the legislature did not have in mind the growth of the city, its increase in population, and necessarily the increase of the pupil children, nor that it did not intend to provide a means of supplying additional buildings when the ones in use should go to decay, or be destroyed by fire,

wind or other casualty. Evidently the statute was not intended to enable the cities to supply these accommodations for the children one time, only, and such as were necessary at that time, and thereafter have no power to replace them, if they should decay or be destroped, or if the increase in the number of the children should make necessary additional houses and grounds. Recurring to the language of the enactment it fixes when the question of a bond issue may be submitted, and that is ''whenever the board of education shall deem it necessary, for the proper accommodation of the schools of such city, to purchase a site or sites, or to erect school houses, etc.'' The meaning is the same, as if it had said that at any time the board of education shall deem it necessary to purchase sites and erect school houses for the accommodation of the children, and that must mean when the houses are no longer suitable or fit, or when additional houses or grounds are needed for their accommodation. The times, however, when an election upon a bond issue may be held are limited to the days upon which regular municipal elections are held. It is apprehended that the provision of the statute which provides: ''No bond issue shall ever be for an amount exceeding the sum of one million dollars'' is what creates the contention that the city, in 1913, having issued bonds in the sum of one million dollars, its power, under that statute, was exhausted. We are of the opinion that this provision has reference to and only limits the amount of the bonds that may be authorized at any one time. If the legislature had intended to limit the amount of bonds that could be issued by virtue of the statute, for all time, to one million dollars, it could and would have employed different language, which would have been expressive of that intention, and to read such an intention into the statute, is not justified by the language of the statute taken as a whole, and all of it must be considered together. State Text Book Commission v. Weathers, 184 Ky. 748; Bowman v. Hamlett, 159 Ky. 184. To place such a construction upon that provision would be to hold that the intention of the legislature was that, although a bond issue of one million dollars was necessary to effect the purposes of the statute in 1913, and when such was contracted, no other bond issue could be made, however, the needs for additional sites, houses and grounds might become, and this, in spite of the provision, authorizing the bonds, which provides than an election may be held upon the question ''when-

ever the board of education shall deem it necessary for the proper accommodation of the schools,'' that sites and grounds be purchased and houses erected.  As we have heretofore shown such intention was evidently not what the legislature had in mind, and the language of the statute does not justify it.  No question of the power to incur indebtedness by a municipality under the provisions of the Constitution, or any other statute than the one under consideration, is presented, or considered.

The judgment is therefore affirmed.