## Nuetzel, County Clerk v. Bradsby.

(Decided October 21, 1924.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

Elections—County Clerk Authorized to Place Names of Candidates for Federal, State, and Municipal Offices on Single Ballot. —Under Ky. Stats., sections 1452, 1453, 1460, 1462, county clerk is authorized to place names of candidates for federal, state, and

municipal offices, except those for board of education, upon single ballot, and also to include on such ballot public measures to be submitted to voters, there being no voters in any precinct affected who live outside city limits.

WM. F. CLARKE, Assistant County Attorney, for appellant.

WM. T. BASKETT for appellee.

FRANK E. DAUGHERTY, Attorney General, for Secretary of State.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

At the general election to be held on the 4th of November, 1924, in the city of Louisville, in Jefferson county, there will be candidates for federal, state and municipal offices, including offices of the board of education in Louisville; there will also be submitted several public measures, one affecting the state at large, and the others the municipality of Louisville.

By statute the names of candidates for the board of education of the city are not placed under any emblem, and are required to be placed upon a separate ballot.

This is a proceeding under the declaratory judgment act to determine whether the county clerk of Jefferson county, in printing the ballots for the election, is authorized to place the names of candidates for the federal, state and municipal offices, aside from those for the board of education, upon a single ballot; or if he is required to place the names of candidates for such municipal offices on a separate ballot, it being admitted that there are no voters in any of the precincts affected who live outside the city limits.

The questions involve a construction of sections 1452, 1453, 1460 and 1462, Kentucky Statutes.

Section 1453 provides certain rules and regulations for the guidance of the clerk in determining the names of candidates that shall be placed upon the respective ballots, and the device or emblem designating the party or principle that the candidate represents.

Section 1460 provides:

"The county clerks of the several counties shall cause the names of all candidates of their respective jurisdictions where nominations for any office specified in the ballot have been duly made and not with-

drawn in accordance herewith to be printed on one ballot and nominations of any party or group of petitioners as designated by them in their certificate or petition. . . . ''

Section 1462 provides:

"All ballots shall. be printed on plain, white paper sufficiently thick that the printing cannot be distinguished from the back, which paper shall be of number one white book paper, and when 26 by 40 inches shall weigh 80 pounds to the ream, or if double cap, forty pounds to the ream, and except in elections for municipal office, shall be furnished to the county clerk by the secretary of state, and it shall be the duty of the county clerk to notify the secretary of state forty-five days before the day of election of the size and number of ballots which shall be necessary for said county. . . . ''

Section 1452 provides:

"The printing and delivery of the ballots and cards of instruction to voters hereinafter described shall, in municipal elections, be paid for by the several cities respectively; and in all other elections the printing of the ballots and cards of instruction for the voters in each county, and the delivery of them to the several voting precincts shall be paid for by the several counties respectively.''

It is admitted that heretofore it has been the custom and practice in Jefferson county to place the names of all accredited candidates upon a single ballot, except candidates for the board of education of the city, the cost of printing and distributing the ballots being *pro rated* between the city and county.

Appellee, a candidate for park commissioner, insists that this is the plain meaning of the statute. That, moreover, it is the simplest and cheapest arrangement that can be adopted and the most expeditious; that where there are no candidates for the board of education an additional ballot doubles the work of the clerk of election, and where there are candidates for such office as in the present instance, an additional municipal ballot would further increase the work of the clerk of election fifty per cent; that this would delay voting, cause congestion at the polls, and

would also tend to confuse the voter in handling so many different ballots.

Appellant, the county clerk, concedes this proposition and states that he is willing and desirous of preparing a single ballot upon which may be placed the measures to be voted upon at the November election and the names of all candidates for office to be voted upon at that time, exclusive of those for board of education, but that he has been advised by the attorney general that the names of candidates for municipal offices and measures to be voted upon affecting the city only, should not be placed upon the same ballot with the names of candidates for federal, state and county offices, but are required to be put upon a separate ballot, and he desires a final determination of his rights and duties in the matter.

In a brief filed on behalf of the secretary of state, the learned attorney general takes the position that under the provisions of section 1462, the state is not required to furnish the paper for municipal elections, and that if the clerk is permitted to place the names of those candidates on a single ballot upon paper furnished by the state, the state is thus required to furnish the paper for municipal elections in violation of the statute; that frequently the names of municipal candidates and measures occupy more space than do the names of candidates for which the state is required to furnish the paper, and that the only reasonable construction to be given the statute is that the legislature intended for the municipal candidates and measures to be placed upon a separate ballot. While plausible, we hardly think such was the legislative intent.

Section 1460 directs the clerk to cause "the names of all candidates of their respective jurisdictions . . . . to be printed on one ballot. . . . "

As he is charged with the preparation of all ballots, the language last quoted seems to negative the idea of a separate ballot for municipalities. This view is to some extent strengthened by the fact that in all instances where the names of candidates are placed under nonemblem devices such as the office of board of education, *supra,* and offices under the commission form of government, there is a provision for a separate ballot (sections 2978a-7, 3235d and 3480b-10, Kentucky Statutes); and also by the provisions of sections 3659 and 3670, Kentucky Statutes, which provide for a separate ballot in

towns where registration is not required, thus indicating a legislative intent to specialize all instances where it deems a separate ballot necessary.

The cases of Cope v. Caldwell, 29 L. R. 263, and Rice v. Mounts, 123. Ky. 590, involved the validity of elections held in towns of the fifth and sixth classes, which fell within the provisions of sections 3659 and 3670, *supra*. A separate ballot had not been prepared in either instance, but it appeared that the election precincts and the town limits were identical.

In the former case the court said: "Our conclusion is that the inference to be drawn from section 3670 is that in a case like this when the precincts contain the same electors as the municipality, one official ballot was all that was necessary."

This was approved in the latter case in which it is further said: "As indicated in the Cope v. Cardwell case, *supra,* the statute does not make it mandatory upon the clerk to place the names of the candidates for county and municipal offices upon the same ballot, but he may do it when the territory composing the voting precinct and the municipality are identical."

This is a reasonable construction of the law applying to fifth and sixth class cities, but in cities to which sections 3659-70 do not apply there is still less reason for a separate ballot. The policy of the law is to make the conduct of elections simple and expeditious and to avoid unnecessary complications.

Of course if the precinct contained some voters living within the municipality and some outside the city boundry, a separate ballot would be necessary, and the clerk would act accordingly. Perhaps conditions might arise in which it would be necessary and advisable to prepare separate ballots when all the voters affected live in the municipality, but it is sufficient to say that such conditions do not appear in this case, and we can perceive no good reason for such an arrangement.

We have not overlooked the item of additional expense which might be incurred by the state in furnishing the paper for municipal ballots, but this is a detail which may easily be handled by the clerk by *pro rating* the cost of the paper between the state and the city in proportion to the space reasonably and properly occupied on the ballot by their respective candidates and measures. Concededly in an election where there are no candidates except for municipal offices the municipality will pay the en-

tire cost of the paper, Incidentally it may be said that provision is made for a submission of public measures by section 1459, Kentucky Statutes.

"Whenever a constitutional amendment or other public measure is proposed to be voted upon by the people, the substance of such amendment or other public measure shall be clearly indicated upon the ballot, and two spaces shall be left upon the right of the same, one for votes favoring the amendment or public measure to be designated by the word 'yes' and one for votes opposing the amendment or measure to be designated by the word 'no.' "

The language, *supra*, does not intimate that a separate ballot is contemplated for such measures, but, on the contrary, the use of the words "the ballots" as distinguished from "separate ballots" appearing in connection with nonemblem tickets, clearly indicates that the legislature intended to place such measures upon the regular ballot.

True, where several measures are to be voted upon the voter will be under the necessity of distinguishing between them, but it seems to us that this is less confusing and more easily accomplished than it would be if each appeared upon a separate ballot.

Such seems to have been the view of the chancellor, though the latter matter was not specifically mentioned in the judgment.

Giving the judgment the construction above indicated, it is now affirmed.

Whole court sitting.