## Bullitt v. City of Louisville, et al.

(Decided March 26, 1926.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1.  Schools and School Districts—Question of Issuing School Improvement Bonds Need Not be Submitted on Separate Ballot (Ky. Stats., 1922, Section 2978a-7; Ky. Stats., 1915, Section 2978a, as Amended by Acts 1924, c. 86).—Under Ky. Stats., section 2978a-7, requiring election of members of city board of education by separate nonemblem ballot, and Ky. Stats., 1915, section 2978b, as amended by Acts 1924, c. 86, requiring mayor to see to securing popular vote on school improvement bond question, "conforming, as far as applicable, to the proceedings in case of election for members of the board of education," question whether such bonds shall be issued need not be submitted on separate ballot.

2.  Schools and School Districts—Bond Election Will Not be Set at Naught for Neglect, Mistake, or Misconduct of Officers Conducting or Preparing for it (Ky. Stats. 1922, Section 2978a-7; Ky. Stats. 1915, Section 2978b, as Amended by Acts 1924, c. 86).—Voters may not be disfranchised by setting at naught their emphatically pronounced will because of neglect, mistake, or misconduct of officers charged with conduct of or preparations for school bonds election, as in failing to print separate ballot pursuant to obscure, directory provision of Ky. St. 1915, section 2978b, as amended by Acts 1924, c. 86, requiring conformity to proceedings for election of city board of education under Ky. Stats. 1922, section 2978a-7.

3.  Elections.—It is policy of law to uphold elections.

4.  Schools and School Districts—Issuance of School Bonds, Approved by Voters, May Not be Enjoined on Ground that Pending Contest Involving Titles to Municipal Offices Filled at Same Election May

Result in Adjudication of no Election Affecting Validity of Bonds. —Issuance of school improvement bonds may not be enjoined on ground that pending contest involving titles to municipal offices filled at election, at which bonds were voted, may result in adjudication that there was no election, thereby possibly affecting validity of bonds, since courts of equity have no inherent jurisdiction or statutory power to try election contests.

5.  Schools and School Districts.—That council delegated to mayor power to fix rate of interest in school improvement bonds held not to invalidate them.

ROBERT L. PAGE for appellant.

ARTHUR M. RUTLEDGE and JOSEPH E. CONKLING for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Upon the trial hereof the learned chancellor of the Jefferson circuit court, chancery branch, second division, delivered a written opinion, which so clearly, ably and correctly states the questions and legal principles involved that this court has concluded to quote it as the opinion of this court:

"This is a taxpayer's suit to enjoin the issue and sale by the board of education of Louisville of certain school improvement bonds, amounting to $5,000,000.00, which were submitted for approval at the municipal election of November 3, 1925, and were approved by a vote of 56,860 to 13,309. The validity of the bonds is challenged upon three grounds:

"First: That the question was not submitted to the electors of the city upon a ballot separate from that upon which party tickets for municipal offices appeared.

"The enabling act (Kentucky Statutes, section 2978b, amended March 27, 1924) imposes upon the mayor of the city the duty of seeing that proper steps are taken to secure a popular vote on the bond question, 'conforming, as far as applicable, to the proceedings in case of election for members of the board of education in cities of the first class.' Elections of members of the board of education are by a separate, nonemblem ballot. (Section 2978a, Kentucky Statutes.)

"It is argued from these provisions that the question of approval of these bonds should have been

submitted upon a separate ballot and that the failure to do so invalidates the bonds.

"The statute controlling the election of members of the board of education does little to dispel the obscurity of this provision of the enabling act. The peculiarities of that statute are nominations by petition, separate ballots, no emblems and separate ballot boxes. If the use of a separate ballot, containing only the bond issue question, was intended to be required by the enabling act, the words used were singularly inapt for that purpose. It has been the custom in this state for many years to submit questions of this kind—bond issues, constitutional amendments, special tax levies, etc.—in the manner in which this question was submitted, that is, by printing the question on the margin of the regular ballot. If the legislature intended a departure from this traditional method, by requiring that questions as to school improvement bonds should have separate and exclusive ballots, it is probable that the intention would have been expressed in language less obscure than is found here.

"It is true that in the election held in Louisville on November 4, 1913, the question of a million dollar issue of school improvement bonds was submitted upon separate ballots (Stuessy v. Louisville, 156 Ky. 523). This was prescribed by the ordinance authorizing the submission of the question. And in the submission of a like bond issue to the electors of the city of Louisville in the election of November, 1921, the ordinance gave the same direction as to separate ballots, although that fact does not appear in the opinion of the Court of Appeals in Bohannon v. City of Louisville, 193 Ky. 276, 235 S. W. 750, in which case that bond issue was sustained. Apparently the advisers of the city and of the board of education, in the two cases last mentioned, thought it possible that the enabling act now under consideration might be construed as requiring separate ballots. But the course of the city council in the two cases last mentioned is no more decisive of the legal question under consideration than is the opposite course taken by the council in the present case.

"The purpose of the requirement of separate, nonemblem ballots in elections of members of the board of education was, of course, to remove those

elections, as far as possible, from the influence of party politics, so that the members of that body should be selected upon personal merit and not upon party standing. The reason fails in the case of a vote on a bond issue. As to such questions, there are no party emblems, there is no party issue, a vote for a party ticket is not a vote on the bond question; the voter must vote separately upon that question. The use of a separate piece of paper would not make the vote upon that question any less partisan. If, therefore, the purpose is looked to, it may be said with much reason that the separate ballot provision of section 2978a is not 'applicable.'

"In Nuetzel v. Bradsby, 205 Ky. 130, 265 S. W. 503, it was held that, in an election in which federal, state and municipal officers were to be chosen and in which there were also to be submitted 'several public measures, one affecting the state at large and others the municipality of Louisville,' the county clerk might use a single ballot for all of these purposes, despite the statutory requirement that the cost of municipal ballots should be paid by the municipality alone. After stating its view of the matter, which seemed to imply that the county clerk has a discretion as to the form of ballot, to be exercised in a manner to secure convenience to the voter and rapidity and accuracy in the work of precinct officers, the court said:

" 'This view is to some extent strengthened by the fact that, in all instances where the names of candidates are placed under nonemblem devices, such as the office of board of education, *supra*, and offices under the commission form of government, there is a provision for a separate ballot (sections 2978a-7, 3235d and 3480b-10, Kentucky Statutes), and also by the provisions of section 3659 and 3670, Kentucky Statutes, which provide for a separate ballot in towns where registration is not required, thus indicating a legislative intent to specialize all instances where it deems a separate ballot necessary.'

"And the court referred also to section 1459, Kentucky Statutes, which provides that 'a constitutional amendment or other public measure' which is to be voted upon 'shall be clearly indicated upon the ballot,' which, said the court, 'clearly indicates that

the legislature intended to place such measures upon the regular ballot.'

"In any event, the provision under consideration falls, I think, into the familiar class of 'directory' provisions, the neglect of which is held to be fatal. This is a doctrine which is frequently applied to elections. It is the rule that a voter may not be disfranchised by the neglect or mistakes, or even misconduct, of officers charged with the conduct of the election. As was said in Barry v. Town of New Haven, 162 Ky. 60, which was a bond issue case:

" ' When it is once admitted that no person voted at said election who did not have the legal right to vote, and that the election is free from fraud or bad faith on the part of any one; that the result fairly expresses the will of the majority, the courts ignore any mere irregularity in the method of establishing that result.'

"And a similar liberality of view is shown in Stuessy v. City of Louisville, *supra*.

"If the voters are not to be disfranchised for omissions or irregularities attributable to officers in charge of the election, no more should they be disfranchised for irregularities or omissions attributable to officers in charge of preparations for an election. In the present instance, more than 70,000 electors voted on this question and the vote in favor of the bonds was 56,860, or more than twice the requisite two-thirds. If it be assumed that the county clerk has failed to print the ballot in the prescribed form, the will of the electors, so emphatically pronounced, cannot be set at naught merely because that officer has misconstrued an obscure, directory provision, which if it had been followed obviously would not have affected the result of the election. It is the policy of the law to uphold elections. Horning v. Fiscal Court, 187 Ky. 87, 218 S. W. 989.

"That was a bond issue case, with application for injunction against the issue of the bonds. The validity of the bonds was challenged on the grounds (1) that the election was held on another day than that named in the petition, although the statute directed that it be held on the day named in the petition; and (2) that there was no sufficient order for registration of voters, as required by law. The court

put these objections aside and sustained the election, saying:

" 'The essential thing to determine concerning an election lawfully held is whether the result as certified by the election commissioners speaks the will of the electorate, and an election should always be allowed to stand if there is a fair and practical way of determining that the result of the election spoke the will of those participating or legally entitled and desirous of participation.'

"And it was held that, even though it was alleged that there was no sufficient order for registration and no publication of the order, as required by law, the petition was demurrable, since it failed to show 'that the result of the election would have been different if the county judge had ordered the special registration at the same time he ordered the election, or that his failure to do so in any way influenced the result.'

"Second: That the contest now pending in the Jefferson circuit court and involving titles to the municipal offices filled at the election of November, 1925, may result in an adjudication that there was no election, in which event the validity of these bonds will (or may) be affected.

"The cases are fatal to this objection. Courts of equity in this state have no inherent jurisdiction to try election contests of any kind, and the statutes give them no power to try disputes as to the validity of elections of the kind here involved. Bass v. Katterjohn, 94 Ky. 284, 239 S. W. 53.

"Third: That the general council of the city has unlawfully delegated to the mayor the power to fix the rate of interest in said bonds.

"The identical objection was made, and rejected, in Hunter v. Quin, Mayor, 208 Ky. 744, 271 S. W. 1060.

"Demurrer of defendants to the petition is sustained.

"LAFON ALLEN, Judge."

For the reasons set forth in the foregoing opinion, the judgment of the chancellor is affirmed.