# City Of Louisville v. Jefferson County Fiscal Court.

June 1, 1948.

Rehearing denied June 25, 1948.

Gilbert Burnett and Alex P. Humphrey for appellant.

Sam Steinfeld for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS— Reversing.

This action was instituted by appellee, Jefferson County Fiscal Court, against the City of Louisville, to collect from the latter 79.4 per cent of the cost of holding a general election in the city and county on November 5, 1946. The 79.4 per cent of the cost was based on the fact that 326 voting machines were used in the election, of which 259 were in city precincts and this made the city liable for 79.4 per cent of the cost of holding the election.

A general demurrer to the petition was overruled and upon the city declining to plead further, the court gave judgment against it in the sum asked of $4,269.73, with 6% interest from November 5, 1946, and the city appeals.

The petition avers the three questions submitted to the voters at that election were: 1. Approval of school improvement bonds for the City of Louisville School District. 2. Election of candidates for the Board of Education of the Louisville School District. 3. Election of candidates for Representative and Senator to the Federal Congress. The first two questions were submitted only to the voters of the city since its boundary coincided with the boundary of the school district, while the candidates for Representative and Senator were voted upon by the electorate of both the county and the city.

It is insisted by the county that the word "ballot" in its broad sense includes a voting machine, citing 18 Am. Jur. sec. 213, p. 324; Annotations 66 A. L. R. 855; Reynolds v. Dallas County, Tex. Civ. App., 203 S. W. 2d 320, and our case of Jefferson County ex rel. Grauman v. Jefferson County Fiscal Court, 273 Ky. 674, 117 S. W. 2d 918. These authorities trace the etymology of the word "ballot" and hold that a constitutional provision that "all elections shall be by ballot" has been construed to permit the General Assembly to authorize the use of voting machines. However, this does not mean that a voting machine is a ballot, but only that the recording of the choice of the citizens on the voting machine "is voting by ballot, that is, by a secret meth-

od.'' See Jefferson County case, 273 Ky. 674, 117 S. W. 2d 918, at page 923. In that case we held the Voting Machine Act of 1938, Chapter 133 of the Acts of that year, K. S. secs. 1596d-1 to 1596d-28, Baldwin's 1938 Supplement, now repealed, violated sec. 147 of the Kentucky Constitution which then provided that a ballot shall be ''furnished'' to the voter and shall be ''marked'' by him and ''then deposited.'' Subsequent to that opinion sec. 147 of the Constitution was amended by the insertion of this sentence, ''Counties so desiring may **use** voting machines, these machines to be installed at the expense of such counties,'' thereby making the casting of a ballot by a voting machine constitutional.

Chapter 125, KRS, relates to the use of voting machines, and KRS 125.200 provides that except as modified in that chapter the general election laws applicable to regular, special and primary elections shall apply to elections conducted with the use of voting machines. There is no provision in Chapter 125 relative to the cost of elections, therefore we must turn to KRS 118.450 dealing with the cost of elections, the applicable portions of which read:

''(1) The printing and delivery of ballots and cards of instruction to voters shall, in city elections, be paid for by the city. In all other elections, the printing of the ballots and cards of instruction for the voters in each county, and the delivery of them to the several voting precincts, shall be paid for by the county.

''(2) The cost of all elections held in any county shall be allowed by the fiscal court and paid by the county treasurer except as otherwise provided by law.''

The quoted parts of this statute are plain. Subsection 1 can only mean that the city must pay for the printing and delivery of ballots and cards of instructions in elections held for the exclusive benefit of the city, or in elections where only citizens of the city may vote. If the election is county wide and citizens of both the city and the county participate in the entire election, then the county must bear the entire expense of the election. Subsection 2 of the statute states the procedure the county will follow in paying the cost of the election.

From what has been written above it is seen that a ballot and a voting machine are not one and the same, although the voting machine does take the place of the ballot as a means of casting a secret vote. We cannot agree with the city that because sec. 147 of our Constitution provides that the voting machines are to be *installed* at the expense of the county, the obligation rests upon the county to bear the expense of delivering the machines to the city precincts in elections held solely for the benefit of the city and in which voters out in the county have no voice. The word "installed" does mean to set up or fix in position for service or use and sec. 147 places that burden upon the county when the machines are purchased, but it does not impose the obligation upon the county to deliver the machines free of cost to city precincts in elections in which only citizens of the city vote after the machines have once been assembled and made ready for use. The city must bear the expense of such elections, including the equipping of voting machines with necessary labels or papers and delivering the machines to the precincts.

In the present instance the election was county wide as to a Representative and a Senator for the National Congress, and under the above quoted part of KRS 118.-450 the county must bear the expense of delivering the voting machines to all the city precincts, as well as the printing of instructions on how to use them. But the expense of printing the cards or labels to insert in the machines so the electorate of the city could vote upon the bond issue and for the candidates for the office of Board of Education should be borne entirely by the city as the voters in the county outside the city had no voice in these matters. We find support in this conclusion in Nuetzel v. Bradsby, 205 Ky. 130, 265 S. W. 503.

As the county in its petition sought recovery against the city for 79.4 per cent of the entire cost of the election, based upon the ratio the city precincts bear to the total number of precincts in the whole county, the trial judge erred in not sustaining the city's general demurrer to the petition and in allowing the county to amend and ask to recover from the city the cost the county incurred solely by reason of the citizens of the city voting on the bond issue and for candidates.

for the Board of Education. Upon a return of the case should the county amend its petition in this manner, judgment will be entered for it in that sum.

The judgment is reversed.