COMMONWEALTH BANK & TRUST COMPANY, Administrator With the Will Annexed of the Estate of William F. Steineker; C. Authur Steineker; Helen Jean Steineker; Alfred William Steineker, III; and Catherine Anita Wimbish, Appellants,

v.

Margaret W. YOUNG; William Welch; Candace Welch; First Kentucky Trust Company, as Trustee Under Living Trust Agreement of Virginia C. Steineker Dated March 16, 1992; David Welch; and National City Bank of Kentucky, As Trustee Under Living Trust Agreement of Virginia C. Steineker Dated March 16, 1992, Appellees.

No. 2010–CA–000593–MR.

Court of Appeals of Kentucky.

Feb. 24, 2012.

John E. Evans, Amy Olive Wheeler, Mark Hurst (argued), Louisville, KY, for appellants.

Homer Parrent, III (argued), Louisville, KY, for Appellees Margaret W. Young; William Welch; Candace Welch and First Kentucky Trust Company.

David Welch, West Chester, OH, pro se.

Christopher W. Brooker, Bruce K. Dudley, Louisville, KY, for Appellee National City Bank of Kentucky.

Before MOORE, NICKELL and THOMPSON, Judges.

## OPINION

THOMPSON, Judge:

Commonwealth Bank & Trust Company, Administrator With The Will Annexed of the Estate of William F. Steineker and the Steineker estate beneficiaries, C. Authur Steineker, Helen Jean Steineker, Alfred William Steineker, III, and Catherine Anita Wimbish (collectively referred to as Commonwealth), appeal a Jefferson Circuit Court order declaring that Margaret W. Young, William Welch, and Candace Welch (the children), did not violate a no-contest clause of a trust document executed by their mother, Virginia C. Steineker. The issues are: (1) whether the order is final and appealable; (2) whether Commonwealth has standing; and (3) whether the children violated the trust document's no-contest clause and, therefore, forfeited their beneficial interest in the trusts. Because multiple parties are involved, it is helpful to establish their respective positions.

## THE PARTIES

In 1974, Virginia and William Steineker married and remained married until Virginia's death in 2000. Her four children, Margaret, William, Candace, and David Welch, were from a previous marriage. William died in 2006.

National City Bank, now PNC Bank, N.A. (National City), served as trustee of three trusts Virginia established during her lifetime for the benefit of William and her descendents. National City also served as executor of William's estate until its resignation was accepted by the probate court in 2009. Commonwealth succeeded National City.

In that same year, pursuant to the power granted them in the trust document, the children removed National City as trustee of Virginia's trusts. First Kentucky Trust Company (FKTC) became trustee of Virginia's trusts.

## VIRGINIA'S TRUST DOCUMENT

In 1992, Virginia executed a revocable living trust document. Consistent with its terms, at Virginia's death, three separate trusts were created: the credit shelter trust; the marital sub-trust one; and the marital sub-trust two. The initial value of the three trusts was approximately $5,700,000. During his lifetime, William was the beneficiary of the trusts, with the remainder to Virginia's four children. When Virginia died in 2000, William and her four children survived.

Specific terms of the trust document are relevant. Article Nine provides for the creation of a marital sub-trust and for payment to William during his lifetime as follows:

### My Spouse's Right to Withdraw Principal

In any calendar year, if my spouse is living, my spouse may withdraw an amount not to exceed five percent of the market value of the principal of the Marital Sub–Trust on the first day of the calendar year.

The children allege that William's right to withdraw five percent of the market value of the principal was limited by terms of the trust document, resulting in an overpayment to William. Commonwealth argues that the children's interpretation is erroneous.

Article Ten provides for monthly payments to William from the net income of the credit shelter trust and states its purpose:

The trustee shall be mindful that my primary concern and objective is to provide for the education, health, maintenance, and support of my spouse and that the preservation of principal is not as important as the accomplishment of these objectives.

The present controversy arises from a no-contest clause contained in the final article, Article Eighteen, entitled "Definitions and General Provisions." In addition to defining words and phrases used in the document, it contains the following clause:

*Section 4. Contest Clause*

If any beneficiary, other than me, shall in any manner, directly or indirectly, attempt to contest or oppose the validity of this agreement, including any amendments thereto, or commences or prosecutes any legal proceedings to set aside this agreement, then in such event such beneficiary shall forfeit his or her share, cease to have any right or interest in the trust property, and shall be deemed to have predeceased me.

At Virginia's death, her will was probated without any action filed to contest the will.

## THE LITIGATION

After William's death, the children filed a claims affidavit in the Jefferson District Court asserting claims that would eventually become the basis for the current action. However, David did not join in the claims affidavit or in the litigation initiated against William's estate or National City. Although we refer to Margaret, William and Candace as "the children," we stress that David is an appellee in this case because he was a party named in the declaratory judgment action. Additionally, we point out that National City did not appeal the trial court's order. Pursuant to a prehearing order issued by this Court, because their positions are antagonistic to the children, David and National City were designated as appellants for the purpose of briefing and their arguments are identical. We proceed with the litigation's history.

Because William was deceased, the children's claims were presented to the executor of his estate, National City, within six months of its appointment as required by KRS 396.011 and KRS 396.015. The affidavit alleged claims against William's estate and over-distributions by National City, acting as executor of Virginia's estate and as trustee of Virginia's trusts, to William during his lifetime. For brevity, we paraphrase each:

(1) During his lifetime, through the exercise of a power of attorney or otherwise, William improperly took money from Virginia during her lifetime:

(2) National City made over-distributions to William from the trust assets including;

(a) Net income from the credit and marital trusts based on National City's accounting;

(b) Paid expenses from the principal of the credit and marital trusts or paid expenses not payable from the trusts;

(c) Permitted William to withdraw both five percent of the marital trusts and five percent of Virginia's estate each year when William did not have a right to withdraw that amount based on one or more of the following:

(i) In 2001, 2002, and part of 2003, National City allowed William to withdraw five percent of Virginia's estate although the marital trusts had not been funded;

(ii) In 2003, National City allowed William to withdraw five percent of the marital sub-trusts principal even though it was not funded on the first day of the calendar year;

(iii) In accordance with the trust document, no payment should have been made to William because he had sufficient assets to provide for his own support; and

(iv) William received excessive amounts upon the exercise of his five percent annual withdrawal power due to National City's overvaluation of trusts assets.

The affidavit also alleged that William violated his fiduciary duty as advisor to the trusts and, further, stated:

This claim in no manner constitutes either an attack on the validity of the Living Trust or an action to set aside the Living Trust, rather, it constitutes an attempt to uphold the provisions of the Living Trust and have it administered according to its terms and conditions.

After National City rejected the children's claims, National City, as Executor of William's estate and as trustee of Virginia's trusts, filed a petition for declaratory judgment. As respondents, the petition named the children, David, and the Steineker estate beneficiaries. In addition to six questions not relevant to this appeal, National City requested a determination as to whether the children triggered the no-contest clause in Virginia's trust document by asserting claims against William's estate and National City and, if so, a declaration that they are ineligible for future benefits.

Four days after National City filed its declaratory judgment action, the children filed an action in the Jefferson Circuit Court against National City, as executor of William's estate, National City as trustee of Virginia's trusts, and National City in its individual and corporate capacities. The identical allegations made in the claims affidavit were incorporated by reference into the complaint.

The declaratory judgment action and the children's action were consolidated. Subsequently, after National City resigned as executor of William's estate, and Commonwealth was appointed, Commonwealth was substituted as a party.

Prior to discovery, the children filed a motion for partial judgment on the pleadings as to the question regarding the no-contest clause presented in the declaratory judgment action. Commonwealth opposed the motion. The trial court granted the motion for partial judgment on the pleadings holding that the children's action against William's estate did not violate the no-contest clause in Virginia's trust document. The order included the finality language required by CR 54.02. Commonwealth's motion to alter, amend or vacate the order by deleting the final and appealable language was denied. This appeal followed.

## WHETHER THE TRIAL COURT ERRED WHEN IT CERTIFIED ITS ORDER AS FINAL AND APPEALABLE AND WHETHER COMMONWEALTH HAS STANDING

The first two issues presented have been previously reviewed by a motion panel of this Court. Commonwealth filed a motion requesting that this Court determine whether the trial court's order was final and appealable. Subsequently, the children filed a motion to dismiss the appeal alleging that Commonwealth did not have standing to appeal because William's estate no longer had an interest in Virginia's trusts. They point out that the terms of the trust document provide that a beneficiary in violation of the no-contest provision is deemed to have predeceased Virginia and that the share of a deceased child is to pass to that child's living descendants,

if any, and if none, to Virginia's living descendants. Both arguments were extensively briefed and rejected.

 This Court retains authority to review decisions on motion panel that do not finally dispose of the case when the case is considered by a full-judge panel to which it is assigned. Our Supreme Court explained the logic of permitting further review:

> An interim or interlocutory order at the trial court level, even one that ultimately proves to be fatal to the outcome of the case, cannot be appealed before the final decision of the trial court disposing of all issues.
>
> Thus, the object of the rules is to *prevent* rather than to require an appeal from an interim order. Such an order is by its nature subject to further review in the court where the case is still pending, either at the request of a party or sua sponte, until a final, appealable decision has been entered, whether by judgment, order or opinion. Insofar as triggering the need for an immediate appeal, there is neither reason nor authority for treating decisions on motion panel which make no final disposition of the case any differently than interlocutory orders in the trial court.

*Knott v. Crown Colony Farm, Inc.*, 865 S.W.2d 326, 329 (Ky.1993) (footnote omitted). Because the parties have devoted substantial space in their briefs to the arguments previously presented to this Court, we explain the reasoning for the order denying the parties' motions.

The trial court decided only whether the children forfeited their beneficial interest in the trusts by filing their action leaving the six remaining questions presented in the declaratory judgment action for later determination. Also pending were the claims presented by the children against William's estate and National City. Despite that multiple claims remained pending, pursuant to CR 54.02, the trial court made a specific determination that there was "no just reason for delay" and designated the order as "final and appealable." Commonwealth contends that the trial court erred when it certified its order as final and appealable.

 As stated in *Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722 (Ky. 2008), the decision to make an order immediately appealable is within the trial court's discretion.

> In any case presenting multiple claims or multiple parties, CR 54.02, like FRCP 54(b), vests the trial court—as the tribunal most familiar with the case—with discretion to "release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions." In such a case, the trial court functions as a "dispatcher." If the trial court grants a final judgment upon one or more but less than all of the claims or parties, that decision remains interlocutory unless the trial court makes a separate determination that "there is no just reason for delay." And the trial court's judgment shall recite such determination and shall recite that the judgment is final.

*Id.* at 726 (footnotes omitted). Quoting *Jackson v. Metcalf*, 404 S.W.2d 793, 794–795 (Ky.1966), the Court emphasized the trial court's broad discretion:

> [W]e believe that where it is reasonably debatable whether a single claim or multiple claims are involved, the trial judge's exercise of discretion in certifying under CR 54.02 will be conclusive as to that issue.
>
> In the exercise of that discretion[,] the trial judge must balance this Court's historic policy against piecemeal appeals and the practical needs of the particular

case before him. The entering of certification under CR 54.02 is no more automatic than is an extension of time to file a record on appeal under CR 73.08. The trial judge should always determine in entering a certification under CR 54.02 that the order being certified is sufficiently important and severable to entitle a party to an immediate appellate review.

*Id.* at 727. The Court further expressed its reluctance to establish fixed guidelines and instead concluded that each case must be examined on a case-by-case basis. *Id.* After a review of the pleadings, we conclude that the trial court acted well within its broad discretion.

The no-contest clause is significant to the pending claims because if the children forfeited their interest in the trusts, they necessarily have no standing to allege that the trusts' assets were improperly distributed. Thus, we turn to the second question: Whether the issue regarding the no-contest clause is severable from the remaining claims.

Commonwealth argues that because the trial court did not provide an explanation for its decision to certify the order for immediate appeal, it is impossible for this Court to scrutinize the trial court's decision for severability. We disagree. The trial court properly complied with CR 54.02 by including the findings that "[t]his is a final and appealable Order and there is no just reason for delay."

The pleadings reveal that the question of forfeiture under the no-contest clause is distinctly different from the remaining issues presented. The children assert that William abused Virginia's confidence when dealing with her wealth and that National City failed to properly administer the trusts, claims that are legally and factually unrelated to the no-contest question. The children's claims concern duties owed by

William and National City and facts that occurred *before* William's death while the no-contest issue concerns the children's alleged violation of the no-contest clause *after* William's death. The remaining questions in the declaratory judgment action also concern the amount and propriety of distributions made to William *before* his death. Because the issues presented are severable, we conclude that the trial court did not abuse its discretion.

■■■ Likewise, this Court's denial of the children's motion to dismiss Commonwealth's appeal was not erroneous. Standing requires that a party "have a judicially recognizable interest in the subject matter of the suit." *HealthAmerica Corp. of Kentucky v. Humana Health Plan, Inc.*, 697 S.W.2d 946, 947 (Ky.1985). The children contend that Commonwealth lacks standing because William's estate is not a beneficiary of Virginia's trusts and, therefore, a stranger to the trusts. We disagree.

The children assert claims against William's estate: Commonwealth is the administrator of that estate and, therefore, represents William who was a beneficiary of the estate when the alleged improprieties occurred. Commonwealth's interests are "real and substantial" and, therefore, it has standing to pursue this appeal. *City of Ashland v. Ashland F.O.P. # 3, Inc.*, 888 S.W.2d 667, 668 (Ky.1994).

## WHETHER THE CHILDREN FORFEITED THEIR INTEREST IN VIRGINIA'S TRUSTS

The parties have devoted much of their briefs to the merits of the children's claims. However, the issue presented is whether the action filed by the children violated the no-contest provision. For reasons that will become apparent, the merits of their claims are not before this Court.

A no-contest clause provision in a will or trust "is referred to as an '*in terrorem* clause'* because its purpose is to strike fear into the heart of a beneficiary who might wish to consider contesting the provisions of the trust." *Johnson v. Smith*, 885 S.W.2d 944, 945–946 (Ky.1994). The reasons for such a clause include the deceased's attempt to avoid costly legal expenses to the estate or trust, antagonism between beneficiaries, and the public exposure of private matters. Although enforceable in Kentucky, no-contest provisions are strictly construed and are not extended beyond their express terms. *Hurley v. Blankenship*, 267 S.W.2d 99, 100 (Ky.1954).

Virginia's trust document contains an enforceable no-contest clause. The question is the scope of that clause. Commonwealth contends that the children's complaint seeking damages against William's estate and National City is a legal action commenced or prosecuted to set aside the trust document because its purpose is to invalidate the trust provisions providing that the income and principal be distributed to William during his lifetime and thwart Virginia's testamentary intent. The children counter that their complaint asserts claims against William's estate for William's breach of fiduciary duties during and after Virginia's death and against National City for its mismanagement of the trusts and distributions to William contrary to the trust document. They point out that their complaint seeks a construction of the trust document, not to invalidate any of its terms.

When a beneficiary challenges the testator's mental capacity to execute the testamentary document or asserts it was executed under undue influence, no-contest clauses apply and the complaining beneficiary's interest in the estate or trust is extinguished. *Id.* However, the result is different when a beneficiary requests a construction of the will or trust document.

In *Dravo v. Liberty National Bank & Trust Co.*, 267 S.W.2d 95 (Ky.1954), the Court clarified the distinction. In *Dravo*, a trust beneficiary filed a petition for declaratory judgment. He alleged that an actual controversy between him, the trust company, and the trust's remainder beneficiary regarding whether an action to define the beneficiary's rights and the trustee's power, duties and rights under the will conflicted with the will's no-contest clause provision. *Id.* at 96. After deciding that a declaratory judgment petition was proper, the Court further commented and stated the accepted rule:

> It is to be noted the condition of forfeiture of benefits under the will is that one shall 'resist its probate or seek in any manner or way, either directly or indirectly, to contest or vacate or annul any provision of this will.' The contemplated suit as described in the petition (and as should be confined in the judgment), would not seek to annul or vacate any part of the will, including the forfeiture clause itself; nor would it endeavor to defeat the expressed intention of the testatrix as to the plaintiff's share in her estate. On the contrary, the suit would affirm the terms of the will and seek merely to establish the beneficiary's rights as he asserts them to be and give effect to the real intent of the testatrix according to the beneficiary's interpretation. Such an action does not constitute a violation of the forfeiture clause. *George v. George*, 283 Ky. 381, 141 S.W.2d 558 [ (1940) ]; *Cohen v. Reisman, supra*, 203 Ga. 684, 48 S.E.2d 113 [ (1948) ]; *Marx v. Rice*, 1 N.J. 574, 65 A.2d 48, 9 A.L.R.2d 584 [ (1949) ]; Notes 5 A.L.R. 1372.

*Id.* at 98–99.

More recently, in *Ladd v. Ladd*, 323 S.W.3d 772 (Ky.App.2010), this Court reaffirmed the rule expressed in *Dravo*. The beneficiary filed a declaratory judgment action requesting a ruling regarding whether certain assets belonged in the trust. *Id.* at 775. Relying on *Dravo*'s distinction between a contest to the validity of the trust's terms and a request for a construction of its terms, the Court concluded:

> In this case, Mary has pled and argued that she is not contesting the validity of the Trust, and the record confirms this to be true. Instead, she is seeking a determination that the assets that Jesse did not transfer into the Trust, or which he eventually withdrew from the Trust, be declared to be non-Trust assets which, pursuant to *Dravo*, does not implicate the no-contest clause. Therefore, the trial court did not err in granting summary judgment on this issue.

*Id.* at 780. Here, the same situation is presented.

The claims asserted against William's estate and National City for alleged wrongful conduct during Virginia's lifetime and over-distribution of the trusts' assets after her death require an interpretation of the trust document. The pleadings do not seek to invalidate any term in the trust document but allege that William acted wrongfully as a fiduciary during Virginia's lifetime and after her death. Similarly, the allegations against National City are that contrary to the trust document, it distributed five percent of the principal of the marital sub-trusts to William.

"The intention of the testator is the polestar guiding the court in the construction of a will." *De Charette v. St. Matthews Bank & Trust Co.*, 214 Ky. 400, 283 S.W. 410, 414 (1926). An action to interpret a will or trust document or an action for breach of a trustee's fiduciary duties is consistent with the well established rule that the deceased's intent be effectuated.

Commonwealth contends that the law recited in *Dravo* and *Ladd* is inapplicable because the children did not file a declaratory judgment action but, instead, filed a complaint for damages. *Dravo* and *Ladd* were both declaratory judgment actions. In *Dravo*, the Court held that a declaratory judgment action under KRS 418.045 could be commenced to determine whether a beneficiary's pursuit of an action to construe a will forfeits his interest. However, its holding does not mandate that a beneficiary obtain a declaratory judgment prior to his pursuit of a judicial construction of the will or an action for damages against a beneficiary or trustee. The Court emphasized the purpose of the Declaratory Judgment Act:

> This is the proper construction and utility of the act as stated by Borchard in the chapter of his authoritative work entitled, 'Avoiding Peril,' pp. 927, et seq. By the procedure a party is enabled 'to avoid the risks of error or disaster by suing an interested adversary for a declaration of his privilege or immunity before acting on his own view of his rights.... The removal of the cloud from his claimed privileges and immunities clarifies the rights of all parties concerned.' p. 929. The learned author, upon cited authority, states that one of the major purposes of the Act is to afford relief from uncertainty and insecurity. He quotes, p. 931, as picturesquely describing this special function, a statement made in Congress some years ago with reference to the Federal Declaratory Judgment Act by the Honorable Ralph Gilbert, a Representative of Kentucky, as follows:
>
> > 'Under the present law you take a step in the dark and then turn on the

light to see if you stepped into a hole. Under the declaratory judgment law you turn on the light and then take the step.'

*Id.* at 97–98.

Applying that analogy to the present case, the children chose to step into the dark and file their claims affidavit and subsequent complaint in the Jefferson Circuit Court and risk falling in the hole where their interests in the trusts would vanish. Although perhaps not the wisest choice, it was one that was, nevertheless, theirs.

Finally, we address the parties' emphasis on the merits of the children's claims and Commonwealth's claim that a judgment on the pleadings was erroneous. Commonwealth argues that discovery would reveal that the children's intent in filing their action was to recover a substantial amount of the money distributed to William pursuant to the trust document and defeat Virginia's intent that he be the primary beneficiary.

A judgment on the pleadings should be granted if it appears that the nonmoving party cannot prove any set of facts that would entitle him to relief. *City of Pioneer Village v. Bullitt County*, 104 S.W.3d 757, 759 (Ky.2003). "In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 883–84 (Ky.App.2002).

Commonwealth misunderstands the nature of the inquiry. The question is whether the pleadings assert claims by the children that directly or indirectly contest the terms of the trust document or attempt to set it aside. The complaint asserts claims against William's estate and the children request that the court interpret various provisions of the trust document and the administration of the trusts. Under the principles enunciated in *Dravo*, the children have not violated the no-contest clause. Although discovery might reveal that their claims are meritless, the no-contest clause is not applicable.

We respond to Commonwealth's contention that if successful, the children would recoup a substantial portion of the distributions to William. We would be more amenable to Commonwealth's argument if Virginia had explicitly stated that no action could be pursued against William for actions taken before or after his death or against National City acting as trustee.[1] However, the no-contest clause only provides for forfeiture if a beneficiary directly or indirectly contests or opposes the validity of the trust document or commences any legal proceeding to set it aside. If the children can prove their claims, William's estate would have to repay a substantial amount of the benefits received. However, William would have received the amount intended by Virginia.

Based on the foregoing, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

1. We make no comment as to whether such a clause would be enforceable or contrary to any statutory duties imposed upon fiduciaries.