RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1003-MR

BARTHOLOMEW MARSHALL                                    APPELLANT


v.                     APPEAL FROM JEFFERSON CIRCUIT COURT
                       FAMILY COURT DIVISION NINE
                       HONORABLE GINA KAY CALVERT, JUDGE
                       ACTION NO. 21-CI-503296


TIFFANY MARSHALL                                          APPELLEE


OPINION AFFIRMING IN PART,
VACATING IN PART, AND
REMANDING

** ** ** ** **

BEFORE: CETRULO, L. JONES, AND McNEILL, JUDGES.

JONES, L., JUDGE: Appellant, Bartholomew Marshall (Father), appeals from the
August 8, 2023 order of the Jefferson Circuit Court which awarded joint custody of
the parties' two youngest children and allowed those children to move to Ohio to
primarily reside with Appellee, Tiffany Marshall (Mother). Father also filed a
motion to strike Mother's "Notice of Intention to Forgo Filing Appellee's Brief"

filed on May 22, 2024. After carefully reviewing the law, we affirm in part, vacate in part, and remand for proceedings consistent with this Opinion. Additionally, we have denied Father's motion to strike by separate order entered concurrently with this Opinion.

## BACKGROUND

The parties were married in 2004 and had three children born to them during their marriage: A.M. (age 17); J.M. (age 6); and M.M. (age 4).[1] Mother left the marital home in October 2021 and moved to Ohio. Father filed a petition for legal separation on October 28, 2021, initially requesting temporary custody of all the children. (Record ("R.") at 1.) Though no orders were entered, the parties began exercising an informal temporary joint custody arrangement with the children remaining primarily with Father.

In early 2022, the parties agreed to have the circuit court appoint a Friend of the Court ("FOC") for the purposes of conducting a parenting time and custody evaluation.[2] The circuit court also entered a temporary order setting a roughly equal parenting time schedule for the Summer of 2022. (R. at 158.) The children primarily resided with Father during the following school year and the

---

[1] These were the ages of the children at the time of the July 21, 2023 hearing.

[2] A Friend of the Court is an individual appointed as an officer by a circuit court to "investigate the child's and the parents' situations, to file a report summarizing his or her findings, and to make recommendations as to the outcome of the proceeding[.]" *Morgan v. Getter*, 441 S.W.3d 94, 111 (Ky. 2014).

issue of child custody and parenting time was not addressed again until the first half of 2023 when the parties both filed motions requesting the children to primarily reside with them. (R. at 323 and 342.) Notably, the circuit court appears to have interpreted Mother's January 16, 2023, motion requesting the circuit court to establish a parenting time schedule with Mother as the primary residential custodian of the children as a motion to relocate; this is pertinent to our analysis as addressed further below. On April 26, 2023, the circuit court entered another temporary order setting an equal parenting time schedule for the Summer of 2023, and set the matter for a hearing. (R. at 466.) The FOC filed a report on June 19, 2023, recommending the parties have joint custody of all the children, J.M. and M.M. to reside primarily with Mother in Ohio, A.M. to primarily reside with Father, and that Father attend therapy to address anger issues and his changing relationship with Mother. (R. at 488.)

The matter came before the circuit court on July 11, 2023, and July 21, 2023, for a hearing on a number of pending issues, namely where M.M. and J.M. would primarily live and child support. Father appeared *pro se* and Mother appeared with counsel. The circuit court took extensive testimony from a variety of individuals including the FOC; some of Father's relatives; and A.M., the parties' eldest child. On August 8, 2023, the circuit court entered an order which awarded joint custody of all three children to the parties; granted Mother's "motion to

relocate" with the two youngest children to Ohio; recognized the agreement between the parties that A.M. would remain with Father in Kentucky; set a parenting time schedule; and ordered Father to attend therapy to address anger issues and ability to coparent. (R. at 548.) The circuit court included finality recitations as required by CR[3] 54.02, though it indicated that the child support issues would be dealt with by a subsequent order.[4] On appeal, Father argues the circuit court's findings concerning his anger issues were not supported by substantial evidence and that the circuit court did not properly apply KRS[5] 403.320 regarding Mother's relocation with M.M. and J.M.

## STANDARD OF REVIEW

"When an appellate court reviews the decision in a child custody case, the test is whether the findings of the trial judge were clearly erroneous or that he [or she] abused his [or her] discretion." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citing *Eviston v. Eviston*, 507 S.W.2d 153 (Ky. 1974)). A judgment is not clearly erroneous if it is supported by substantial evidence, which is "evidence

---

[3] Kentucky Rules of Civil Procedure.

[4] On September 25, 2023, the circuit court entered an order awarding child support and a separate Findings of Fact, Conclusions of Law, and Decree of Dissolution, which reiterated the award of joint custody and relocation as ordered in the August 8, 2023 order. Whether the August 8, 2023 order is actually final and appealable is immaterial to our inquiry, as the notice of appeal may relate forward to the September 25, 2023 decree. *See Johnson v. Smith*, 885 S.W.2d 944, 949 (Ky. 1994).

[5] Kentucky Revised Statutes.

-4-

of substance and relevant consequence having the fitness to induce conviction in the mind" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). In this Court's review, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. Finally, to the extent the circuit court was required to interpret the statutes under KRS Chapter 403 and its application of the law to established facts, we will conduct a *de novo* review. *See Commonwealth v. Montague*, 23 S.W.3d 629, 631 (Ky. 2000) (citations omitted).

## ANALYSIS

To begin, we recognize that Mother did not file an appellee's brief. Father's brief has its own deficiencies as well. As addressed in Mother's January 24, 2024, motion to dismiss the appeal,[6] Father failed to include appropriate preservation statements pursuant to RAP[7] 32(A)(4). RAP 31(H) provides penalties the Court may invoke if an appellee's brief has not been timely filed or if an appellant's brief does not comply with the RAPs. The decision whether to impose any of these penalties is within our discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). In this instance we determine that Father's brief is

---

[6] This Court ultimately denied Mother's motion on May 8, 2024; however, it noted that "[t]his Court retains authority to review decisions on motion panel that do not finally dispose of the case when the case is considered by a full-judge panel to which it is assigned." *Commonwealth Bank & Tr. Co. v Young*, 361 S.W.3d 344, 350 (Ky. App. 2012).

[7] Kentucky Rules of Appellate Procedure.

substantially compliant, and because this case involves matters affecting the potential welfare of children, we decline to impose any penalties afforded by RAP 31 against either party. *See, e.g.*, *Ellis v. Ellis*, 420 S.W.3d 528, 529 (Ky. App. 2014) (citing *Galloway v. Pruitt*, 469 S.W.2d 556, 557 (Ky. 1971)). We now turn to the merits of the appeal.

## A. Anger Management Therapy

Firstly, Father argues that substantial evidence does not exist to prove that he has anger issues and the circuit court erred in ordering him to attend therapy.

A circuit court, acting under the additional jurisdiction of a family court division, has a number of tools it may employ to promote its underlying purposes. *See N.B. v. C.H.*, 351 S.W.3d 214, 220 (Ky. App. 2011) (citing KRS 23A.110). Ordering a party or child to therapy is one such tool, "effecting [the circuit court's] purpose of 'strengthen[ing] and preserv[ing] the integrity of the family and safeguard[ing] marital and familial relationships.'" *Id*.; *see also Turner v. Turner*, 672 S.W.3d 43, 57 (Ky. App. 2023).

Regarding the circuit court's findings, Father maintains that the FOC solely relied on communications he had with Mother and the FOC in which he was "simply defending his position" as a basis for recommending anger management therapy. He also states that the FOC overlooked his concerns with Mother having

-6-

anger issues. On the other hand, the FOC's report outlines a variety of concerns regarding Father's ability to appropriately communicate, including Father's defensiveness and hostility regarding normal requests for information and degrading tone exhibited towards Mother. (R. at 492.) The FOC reiterated her concerns during the hearing, additionally testifying that Father was exhibiting those same concerns during the hearing itself. (Video Record ("V.R.") July 11, 2023 Hearing – 10:34:30 and 11:31:45.)

The circuit court took into consideration the FOC's recommendations and also found the following:

> The Court has been presented with evidence of the Petitioner father injuring the Respondent mother in a joint altercation. The Court was also presented with instances of controlling behavior, using the Bible as a pretext, and gaslighting behavior on the part of Petitioner father. He has used their children to control the Respondent mother. The Petitioner father is hereby ordered to attend therapy to address his anger issues and co-parenting abilities.

(R. at 547.)

While Father takes issue with some of the testimony surrounding the joint altercation, he does not contest that it happened and that Mother was injured during it, nor does he contest that the parties have significant coparenting issues. We hold the circuit court did not abuse its discretion in ordering Father to attend therapy to address anger and coparenting issues.

-7-

## B. Relocation

Next, we turn to Father's argument that the circuit court did not properly apply KRS 403.320 when addressing the relocation issue. Namely, he asserts the circuit court did not correctly weigh the evidence presented to satisfy KRS 403.320(3).

"Courts have struggled ever since the concept of joint custody emerged with what part physical or residential possession of the child plays in each type of custody." *Pennington v. Marcum*, 266 S.W.3d 759, 767 (Ky. 2008). Recognizing the need for elucidation, the Kentucky Supreme Court addressed the issue in the paramount sister cases of *Pennington* and *Frances*, *supra*, in which it decided that whether a final custody decree has been entered is imperative to determining which statutes are to be applied to the circuit court's determination. "Prior to entry of a custody decree, a [circuit] court may enter temporary custody orders pursuant to KRS 403.280, and may determine timesharing/visitation pursuant to KRS 403.320, which may be modified whenever it is in the child's best interests to do so." *Pennington*, 266 S.W.3d at 765. However, when a circuit court is making a final and appealable custody decree, it must do so based on the best interests of the child standard contained in KRS 403.270. *Frances*, 266 S.W.3d at 756-57; *see also Layman v. Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020).

In *Frances*, the circuit court initially awarded temporary joint custody to the parents after the mother had moved to a different state and filed a motion for custody. The circuit court then conducted a hearing and entered a final custody decree awarding the parties joint custody and setting a parenting time schedule in which the children primarily resided with the father. *Frances*, 266 S.W.3d at 755. The *Frances* Court held that "this case is not about the typical relocation questions of whether the relocation warrants a change of custody or of timesharing. Since this was the actual custody determination, the trial court had a clear directive to make its decision based on the best interests standard set forth in KRS 403.270." *Id*. at 758.

The instant case is factually similar to *Frances*, in that the parties were exercising temporary joint custody with a temporary equal parenting time schedule, and Mother's motion to alter the parenting time schedule to allow the children to reside with her primarily was made before the entry of a final custody decree. On July 11, 2023, and July 21, 2023, the circuit court essentially conducted a final custody hearing, as can be seen in its August 8, 2023 order and September 25, 2023 decree. Thus, to the extent that we will address Father's argument, he is correct that the circuit court did not properly apply KRS 403.320. KRS 403.270 should have been applied instead, and Mother's pending January 16,

2023 motion was incorrectly construed as a motion for relocation. *Frances*, 266 S.W.3d at 756.

We note that the required inquiry under KRS 403.270 and KRS 403.320 is substantially similar; both include making determinations based on a child's best interests. However, since *Frances*, legislative amendments have been enacted which create an important distinction between the standards outlined by the statutes, namely, the rebuttable presumption that joint custody and equal parenting time are in a child's best interests under KRS 403.270.[8]

> With these principles in mind, we turn to the plain language of the two statutes at issue: KRS 403.270 and KRS 403.320. Each addresses a separate stage of a custody dispute: the initial custody determination and modification of visitation or timesharing. For each of these stages, a different standard is established. Under KRS 403.270, an initial determination of custody requires consideration of the best interests of the child, with a rebuttable presumption that joint custody and equal parenting time is in the child's best interests. A modification of visitation or timesharing, governed by KRS 403.320, on the other hand, requires that the change be in the best interests of the child, unless the modification is "less than reasonable," in which case the physical, mental, moral, or emotional health of the child must be seriously endangered.

---

[8] While domestic violence was alleged between the parties, a domestic violence order was never entered, so KRS 403.315 is not applicable, and the presumption of equal timesharing still applies.

*Layman*, 599 S.W.3d at 429-30 (noting the change to KRS 403.270 which was enacted in July 2018).

In both the August 8, 2023 order and the September 25, 2023 decree, the circuit court made no mention of the KRS 403.270 presumption. Upon review of the July 11, 2023, and July 21, 2023 hearings, the circuit court likewise made no mention of any of the related statutes or case law. While the circuit court conducted an appropriate consideration of factors relating to the best interests of the children under KRS 403.270(2), it clearly erred in applying KRS 403.320 and *Pennington*, and failed to explain why it deviated from the presumption of equal timesharing contained in KRS 403.270. *See Anderson v. Johnson*, 350 S.W.3d 453, 457 (Ky. 2011); *see also Childress v. Hart*, 592 S.W.3d 314, 318 (Ky. App. 2019).

## CONCLUSION

In conclusion, the portions of the August 8, 2023 order and the September 25, 2023 decree concerning the relocation of the youngest two children and the timesharing involving them is vacated, and the remaining portions are affirmed. Accordingly, this matter is remanded to the circuit court for further factfinding and analysis to determine if Mother has rebutted the presumption of equal timesharing pursuant to KRS 403.270(2). In doing so, the circuit court must specifically apply the rebuttable presumption in favor of equal timesharing with the

-11-

youngest two children, and if it concludes the presumption has been rebutted, it must expressly state its reasoning and craft a parenting time schedule that maximizes the children's time with Father while taking into account their best interests. While the circuit court may comply with this Opinion with only a review of the existing record, we note that its use of judicial resources shall not be limited if it deems further evidence is needed.

For the foregoing reason, we affirm in part, vacate in part, and remand to the circuit court for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Bartholomew Marshall, *pro se*
Louisville, Kentucky