Judge Rowan
delivered the opinion of the court.
In the will of Duncan, the testator, among other clauses are the three following, viz:—1st. “To my daughter, Polly “Breckenridge, I give the negroes, and all the other proper“ty that I have put into her possession.” 2d. “To my “daughter, Eleanor Breckenridge, I give the negroes, and “all the property I have put into her possession.” 3d. “To “my daughter Sally, I give three negroes, namely, Maryann, “Cassandra, and Jerrard, all her beds and furniture that “she has acquired since she was of age, and her horse, sad“dle and bridle, and likewise all her other property that “she has acquired since she has become of age.”
The testator had several sons, to each of whom he devised land, but no negroes. To his daughters he gave negroes as above, but no land. To Polly, upon her intermarriage with the complainant, John, he gave a negro girl and a negro boy, together with house-hold furniture. To Elleanor, upon her intermarriage, he gave, in like manner, three negroes and some house-hold furniture. He had two negro fellows, viz. Sam and Jack. Jack he hired to one of his sons, for several years before his death (which happened in the fall of the year 1818,) at the price of $80 per year. Sam he hired, in like manner, to John Breckenridge, the appellant, yearly, from the year 1815, till his death, at the like price of $80 per year. Polly and John were intermarried in the year 1810. Sam was in the possession of the appellants, upon hire as aforesaid, at the date of the will, and at the time of the testator’s death. The appellants claimed Sam under the first above recited clause of the will, and exhibited their bill in the court below against the appellees, the executors, to compel them to assent—The executors answered, refusing to assent. The court, upon final hearing, dismissed the bill;—from which decree of dismissal an appeal was prayed, and the cause brought to this court.
In the construction of a will, the intention of the testator is to be ascertained, and effectuated. In that, as in every other instrument, the rules of construction are to be employed only when doubt exists. When a doubt exists as to the intention of the party, it is called, in law-language, a patent ambiguity. But when the intention of the party is *51 clearly expressed, and a doubt exists, not as to the intention, but as to the object, to which the intention applies, it is, in the same language, called a latent ambiguity. The helps to be employed in the solution of the patent ambiguity, are to be collected from the face of the instrument alone, in which it originated—and in this service the context, and every legitimate rule of exposition, may be enlisted, and used in obedience to the maxim, “ut res magis valeat, quam pereat," but parol testimony, or extraneous proof of any kind, is inadmissible: Not so, in relation to a latent ambiguity. There, as the doubt originated not on the face, but dehors the instrument, not as to the intention of the party, but as to the nature, or state of the facts in the country, any legitimate evidence, of which the facts are susceptible, from that quarter, is admissible to remove the doubt. In this case no doubt can be entertained as to the intention of the testator; it is clearly expressed “To my daughter Polly I give, &c. the negroes that I put into her possession.” To the negroes which the testator had put into the appellant Polly’s possession, she is clearly entitled under this bequest in his will. But what negroes, and how many, he had put into the possession of his daughter Polly, are facts dehors the will, concerning which doubts are entertained: These doubts belong to the latent class, and are, as they may well be, solved by the proof in the cause, from the country. We learn from the entire will, as we might have inferred from the situation of the testator, that under the impression of an approaching dissolution, and in contemplation of that event, his mind was employed in providing for his children; they were the objects of his affection, as they were about to be of his benefaction—his mind flowed in the channels of his affection, or, to speak more emphatically, of his blood, He had two sons-in law—neither of them are named—perhaps neither of them were thought of;—Every child is thought of, named, and provided for as such:—To his child Polly, he gives the negroes which he had put into her possession. We learn from the proof in the cause that he had, eight years anterior to the date of the will, given to her two negroes, viz. Winny and Frazier, upon her intermarriage with the appellant, John. Those negroes were given to Polly upon her marriage. Sam, the negro in contest, was five years afterwards hired to John. To my daughter Polly I give the negroes, &c. that I put into her possession. To whom does the testator allude as the donee? his child, his *52 daughter Polly—to what negroes does he allude? to those which he had given into her, Polly’s, possession. Who were they? Win and Frazier, whom he had put into her possession upon her marriage. He had never put Sam into her possession. He had never displayed any donative intention in relation to Sam. He had put Sam into the possession of John Breckenridge; of John, not of Polly; of him, not of her, in the year 1815; not in the spirit of gift, but of gain; not for an indefinite time, but for a year, at the price of $80; which process was renewed every successive year, until his death. Sam is not the only slave not specifically disposed of by the testator in his will—Jack, a fellow of not less value, who was, in like manner, out upon hire, is alike without any specific notice in the will. We cannot, therefore, think that Sam was given by the will to the appellants. In this sentiment we are the more confirmed from the consideration that the negroes given to Polly, upon her marriage, were, at the date of the will, (owing to their increase) of more value than the negroes given to either of her sisters, at that time.
The decree of the court below, dismissing the bill of the appellants, must therefore be affirmed with costs.