Tim STRUNK, Individually, and Peggy Neal Individually, and as Co–Executors of the Estate of Mamie L. Strunk, Deceased, Appellants

v.

Robert LAWSON, Individually, and as Co–Executor of the Estate of Mamie L. Strunk, Bill Foggo, Individually, and as Fiduciary of the Estate of Bonnie Foggo, Deceased; Gary Stouse, Individually and as Fiduciary of the Estate of Gail Stouse, Deceased; Jason Stouse; Vanessa Stouse, a Minor; Mildred M. Leonard; Shirley Byrd; Janie Lynn Lawson Stanley; Edna Musgrove Murphy; Christy Lawson Midden; William David Gover; Randall E. Maynard; and Marsheila Cummings, Appellees

and

Peggy Neal, Individually, and As Co–Executrix of the Estate of Mamie L. Strunk, Deceased; and Tim Strunk, Individually and as Administrator of the Estate of Hobart Strunk, Deceased, Appellants

v.

Estate of Mamie L. Strunk, Deceased, by and Through Robert Lawson, Individually, and as Co–Executor of the Estate of Mamie L. Strunk; Bill Foggo, Individually, and as Fiduciary of the Estate of Bonnie Foggo, Deceased; Gary Stouse, Individually and as Fiduciary of the Estate of Gail Stouse, Deceased; Jason Stouse; Vanessa Stouse, a Minor; Mildred M. Leonard; Shirley Byrd; Janie Lynn Lawson Stanley; Edna Musgrove Murphy; Christy Lawson Midden; William David Gover; Randall E. Maynard; and Marsheila Cummings, Appellees

and

Tim Strunk, Individually, and as Executor of the Estate of Hobart Strunk, Deceased; and Peggy Neal, Individually and as Co–Executrix of the Estate of Mamie L. Strunk, Deceased, Appellants

v.

Estate of Mamie L. Strunk, Deceased, by and Through Robert Lawson, Individually, and as Co–Executor of the Estate of Mamie L. Strunk, Bill Foggo, Individually, and as Fiduciary of the Estate of Bonnie Foggo, De-

ceased; Gary Stouse, Individually and as Fiduciary of the Estate of Gail Stouse, Deceased; Jason Stouse; Vanessa Stouse, a Minor; Mildred M. Leonard; Shirley Byrd; Janie Lynn Lawson Stanley; Edna Musgrove Murphy; Christy Lawson Midden; William David Gover; Randall E. Maynard; and Marsheila Cummings, Appellees.

Nos. 2009–CA–001810–MR, 2010–CA–001133–MR, 2010–CA–001195–MR.

Court of Appeals of Kentucky.

July 26, 2013.

Rehearing Denied Dec. 2, 2013.

Austin Price, Whitley City, KY, John G. Prather, Jr. Somerset, KY, for appellant.

Tim Lavender, Whitley City, KY, Howard O. Mann, Graham C. Trimble, Corbin, KY, for appellee.

Before CAPERTON, COMBS and NICKELL, Judges.

## OPINION

NICKELL, Judge:

These consolidated appeals challenge the McCreary Circuit Court's interpreta-

tion of the will of Mamie L. Strunk (Mamie).[1] The challenge is brought by Peggy Neal (Neal)[2] and Tim Strunk (Strunk)[3] as the result of a declaratory judgment action filed by Robert Lawson (Robert)[4] as co-executor of the estate. Upon careful review of the record, the briefs and the law, we affirm the judgment.

## BACKGROUND

The rub in Mamie's will is a bequest of 970 shares of stock in the "Bank of

1. Mamie died testate in 2003 at the age of eighty with an estate valued at about $2,500,000.00. Her estate contained realty, livestock, household furnishings, certificates of deposit, bank accounts, a vehicle, and a lien retained in a deed, but the largest asset was 10,000 shares of stock in McCreary Bancshares, Inc. (MBI) valued at about $2,200,000.00. Mamie had no children. At death, she was married to her third husband, Hobert Strunk (Hobert). Her will was filed for probate in McCreary District Court on October 15, 2003.

 The will being interpreted was the second drafted for Mamie by attorney Hon. Ruben Hicks. He acknowledged drafting Mamie's first will (date unknown), but testified he did not retain a copy, nor did he recall any details. Family members speculated Hicks drew the first will when Mamie owned only 1,000 shares of bank stock, and claimed it made an identical distribution of stock as the will currently under review. The first will was not produced for comparison.

2. A distant relative of Mamie's, twice referred to in the will as "my dear friend." Under Item II of the will she was to receive 75 shares of stock. Under Item VI of the will, she was to share with Hobert, "the balance" of any proceeds remaining after stock distributions; eleven bequests of $1,000.00 each; and the payment of debts, taxes, funeral expenses and administration costs. Under Item IX, Neal and Hobert were to be appointed as executor and executrix of the estate without bond. Due to Hobert's failing health, he was not appointed and died a few months after Mamie. Neal was appointed sole executrix and bond was fixed at $2,100,000.00.

3. Mamie's step-grandson. Item VI of the will bequeathed him $1,000.00. From 1980 until death in 2003, Mamie was married to Hobert. He was fourteen years her senior and in frail health, having been diagnosed with terminal cancer. Mamie was expected to outlive Hobert. There was testimony Mamie wanted to care for Hobert, both financially and health-wise. Strunk, Hobert's adopted son, administered Hobert's estate.

4. Mamie's stepson. Under Item II of the will, both he and his sister, Janie Lynn Lawson Stanley, were to receive 100 shares of stock apiece. Item III of the will devised a piece of real estate to Robert alone.

Robert and his sister are the children of Mamie's second husband, the late W.Z. Lawson (W.Z.). When W.Z. died in 1977, he was Chairman of the Board of Directors of the Bank of McCreary County (BMC). During Mamie's eleven-year marriage to W.Z., she personally acquired stock in BMC. Upon his death, she inherited all of W.Z.'s BMC stock as his surviving spouse. The bank stock was the largest asset in Mamie's estate and is at the heart of this appeal.

Soon after the McCreary District Court appointed Neal to serve as executrix of Mamie's estate, Robert moved to disqualify Neal, replace her as executrix, and require surety. The basis for the motion was a conflict of interest since depending upon how the will was interpreted, Neal would inherit a substantial number of shares of stock or a much smaller quantity of stock. The motion asked that Neal be replaced by a "disinterested third-party to serve with good and sufficient bond and corporate surety." The district court denied the motion, but appointed Robert co-executor requiring him to execute a fiduciary bond in the amount of $2,100,000.00 without surety. The court further required Robert and Neal to make all decisions concerning the estate jointly.

As co-executor of Mamie's estate, and with leave of the district court, Robert petitioned the McCreary Circuit Court for a declaration of rights listing Neal and fourteen heirs named in the will as respondents. With the agreement of all, the McCreary Circuit Court realigned the parties so that Robert and thirteen heirs were identified as petitioners and Neal and Strunk were the respondents. The trial court's resolution of the petition is the basis of this appeal.

McCreary County" (BMC) that were not owned by the estate when Mamie died in 2003, and 10,000 shares of stock in McCreary Bancshares, Inc. (MBI) that were owned by the estate but for which no specific provision was made in the will. Petitioners, primarily descendants of Mamie's second husband, W.Z. Lawson, through whom much of the bank stock originated, argued 9,700 of the 10,000 shares of stock in the estate should pass pursuant to Item II of the will which specified bequests of stock to 13 named individuals.[5] Neal and Strunk, respondents below (now appellants), argued that only 970 shares of stock should pass under Item II of the will and the remaining 9,030 shares should pass under Item IV of the will, commonly referred to as a residual clause.

We begin with a recitation of relevant provisions of the will. Item II made specific bequests of stock. Item VI contained a residual clause directing the executrix and executor to sell all of Mamie's remaining realty and personalty ("including stock in the Bank of McCreary County not bequeathed in Item II") to pay debts and funeral expenses; to devise $11,000.00 in $1,000.00 increments pursuant to a schedule; and finally, "[t]o my husband, Hobert Strunk, and my dear friend, Peggy Neal, the balance of such proceeds, share and share alike." Item VII stated additional provision had been made for Hobert through survivorship accounts at BMC and title to other assets in their joint names with right of survivorship. Also deserving of mention is Item VIII, an *in terrorem* clause, directing:

It is my desire that my property be divided as hereinabove set forth, and in keeping with that desire should any of my said devisees and legatees attempt to contest or otherwise pervert the orderly procedure and distribution as herein directed, then and in that event such recalcitrant devisee or legatee shall receive no part of my estate. None of the persons herein named, or anyone else, has any claim for services or otherwise against my estate.

Finally, Item IX designated Hobert and Neal to serve as executor and executrix without bond.

Following the denial of motions for summary judgment and a bench trial, on June 16, 2009, the trial court issued a 21–page opinion that closely followed pleadings filed by Robert on behalf of the estate. The court found: BMC and MBI are separate legal entities; Mamie's MBI stock was directly attributable to her previously-owned BMC stock; Mamie was a competent, intelligent woman who was aware of her financial holdings, formation of MBI in 1982, and a 1995 stock split; Mamie dictated the desired language of her will to her attorney and he wrote it verbatim into the will that Mamie reviewed and executed in 1997; and finally, at death, Mamie owned no shares of BMC stock, but did own 10,000 shares of MBI stock.

 From these facts, the court drew the following conclusions. The will's *in terrorem* clause was not triggered by the filing of the declaratory judgment action because requesting interpretation of a will's language is not a will contest. *George v. George,* 283 Ky. 381, 141 S.W.2d 558 (1940). Under the polar star rule, the

---

5. Two sisters, two nieces and two step-children carrying the Lawson name all received 100 shares apiece. A first cousin received 75 shares. Hobert received 100 shares. Two step-grandchildren received 50 shares apiece. A nephew and niece received ten shares apiece. Neal received 75 shares. The spelling of some names in the will differs from the spelling used on a "relationships" chart created for this litigation. Some of the women were not identified by their current names.

court must determine the testator's intent from what she said—not from what she might have said. So long as the testator's intent is clear from the four corners of the will, resort to rules of construction and extrinsic evidence is unnecessary. *Bireley's Adm'rs v. United Lutheran Church in America*, 239 Ky. 82, 39 S.W.2d 203, 205 (1931); Merritt, Kentucky Practice; *Probate Practice and Procedure*, Sec. 1151 et seq.

Though Mamie did not own stock in BMC at the time of her death, the bequest of BMC stock did not fail (in other words, there was no ademption)[6], because the BMC stock she attempted to devise had been converted into the MBI stock she owned at death. *Goode v. Reynolds*, 208 Ky. 441, 271 S.W. 600, 604 (1925). Thus, the stock's change in form did not defeat the bequest contained in the will. The trial court found this view to be buttressed by KRS[7] 394.550(3), Kentucky's anti-ademption statute, which, without reference to timing directs, "[a]ll shares of stock issued as a result of merger, consolidation, reorganization or other similar action, and attributable to the devised shares" are included in any legacy of stock. *See Hatcher v. Southern Baptist Theological Seminary*, 632 S.W.2d 251, 254 (Ky. 1982). Thus, the fact that the stock was converted in 1983 and split in 1995, *before* the will was executed in 1997, was not fatal to the bequest.[8]

While the court found the bequest did not fail for attempting to devise an item that did not exist as named in the will, it did find the bequest was ambiguous due to the misidentification of the stock and therefore, an interpretation was necessary. The court stated that because it was converting the bequest of BMC stock into a bequest of MBI stock, it was also necessary to multiply the number of shares bequeathed by ten to reflect the ten-for-one stock split. (Thus, a bequest of 100 shares of BMC stock became a bequest of 1,000 shares of MBI stock). The court stated it would reach this conclusion whether it literally enforced the words of the will or relied upon rules of construction and extrinsic evidence to interpret the will. The court concluded this resolution was consistent with case law favoring distribution of one's estate to the natural objects of one's bounty, *Clarke, Trustee, et al. v. Kirk, et al.*, 795 S.W.2d 936 (1990), and a 1987 Shareholder Agreement restricting ownership of MBI stock to "parents, siblings, or lineal descendants."

Ultimately, the trial court adjudged the will to be valid[9] and deemed each bequest of BMC stock to be a bequest of MBI stock. Furthermore, it multiplied the number of shares bequeathed under Item II of the will by ten to reflect the 1995 stock split. The court denied all other relief, awarded costs to the petitioners, and entered a final and appealable judgment.

The wrangling did not end. Robert moved to alter, amend or vacate the judgment to: correct a typographical error; clarify that the codicil removing Stouse as an heir due to her death was still in effect;

---

6. Ademption is "[t]he destruction or extinction of a legacy or bequest by reason of a bequeathed asset's ceasing to be part of the estate at the time of the testator's death; a beneficiary's forfeiture of a legacy or bequest that is no longer operative." Black's Law Dictionary (7th ed.1999).

7. Kentucky Revised Statutes.

8. A codicil executed in 1999 rescinded a devise of 100 shares of BMC stock to a niece, Gail Stouse, who predeceased Mamie. The codicil was typed on BMC letterhead by a BMC employee.

9. A point not contested by any party.

note that Hicks's purchase of new office space had a bearing on when Mamie's first will was executed; and rule that if anyone had violated the will's *in terrorem* clause, it was Neal and Strunk. Neal filed her own motion to alter, amend or vacate arguing: validity of the codicil was never raised in circuit court; the trial court had found a latent ambiguity only as to the *name* of the stock bequeathed (not as to the number of shares devised); Robert should not have been named co-executor because Mamie did not specify his appointment in the will; and costs should have been split by the parties, not awarded to the petitioners. Neal also moved to stay the proceedings pending appeal and asked that no supersedeas bond be required.

Robert followed by moving for: twelve percent interest until the judgment was paid; posting of a supersedeas bond of about $2,200,000.00 or at least $1,749,000.00 (the amount due other heirs under circuit court's interpretation); and, a supplemental judgment ordering final distribution of the estate. Robert argued the award of costs to the estate was appropriate under KRS 453.040. He noted that charging costs to the estate would mean the successful parties would bear the costs of the litigation. He also argued the filing of a full supersedeas bond was required by CR [10] 73.04.

On September 4, 2009, the trial court entered an amended judgment that made only minor changes. In a separate order and supplemental judgment entered the same day, the trial court denied Neal's objection to paying costs; ordered Neal and Strunk to pay the petitioners $2,151.27 in costs; denied Neal's request for a stay; ordered Neal and Strunk to post a supersedeas bond in the amount of $1,529,000.00 with corporate surety; directed an amended estate tax return be filed within 15 days

of the entry of the order; and awarded twelve percent post-judgment interest beginning June 12, 2009.

Neal and Strunk moved to alter, amend or vacate the supplemental judgment arguing the trial court should modify its order to set a bond amount, and begin accrual of interest in September· 2009 rather than June 2009 because the delay was not their fault alone. They also argued the estate could not be settled before the amended federal tax return had been accepted and the Kentucky inheritance tax return filed. By order entered June 2, 2010, the trial court directed Neal and Robert, as co-executors, to review the proposed tax returns and execute them absent material objection. All other outstanding motions were denied.

October 1, 2009, Neal and Strunk filed a joint notice of appeal challenging both the original judgment (entered June 2009) and the amended version (entered September 2009). On June 14, 2010, Neal filed another notice of appeal, this time challenging an order entered June 2, 2010, requiring tax returns to be reviewed and executed. Strunk filed a similar notice of appeal on June 22, 2010. On September 22, 2010, we consolidated all three appeals and now address the four issues raised on appeal.

## I. WAS THE WILL AMBIGUOUS?

▮ The first question posed by Neal and Strunk is whether it was necessary for the trial court to interpret the will. Interpretation is required when a will is ambiguous. An ambiguity may be either patent or latent. If patent, there is doubt as to the testator's intention on the face of the will; if latent, the testator's intent is clear, but there is doubt about the object devised. *Breckenridge v. Duncan,* 2

10. Kentucky Rules of Civil Procedure.

A.K.Marsh. 50, 9 Ky. 50, 1819 WL 1152 (Ky.1819). Here, the trial court found a latent defect in the item devised since the estate contained no BMC stock.

The will Mamie executed in 1997 bequeathed 970 shares of BMC stock to thirteen heirs. This was a problem because Mamie had owned no BMC stock since 1983 when all shares of BMC were converted into shares of MBI, a closely-held bank holding company formed in 1982. Once MBI was created and all BMC stock converted into MBI stock, Mamie no longer owned any BMC stock and therefore, had none to bequeath in her will. There was no question Mamie's BMC stock of yesteryear existed as MBI stock in 1997 when she executed her will—thus, her consistent reference throughout the will (and in a codicil executed in 1999) to BMC stock was a mystery.

So long as the intention reflected in Mamie's will was legal, it controls distribution of her estate. *Clarke*, 795 S.W.2d at 938 (polar star rule). Based solely on the four corners of the will, the trial court had to determine what Mamie meant by what she said. Only if her intent was ambiguous, would the court apply extrinsic evidence and rules of construction. *Bireley's Adm'rs*, 39 S.W.2d at 205.

Neal and Strunk acknowledge the trial court correctly converted the bequest of BMC stock into a bequest of MBI stock, but contend the judgment went too far in that it also multiplied the bequests mentioned in Item II by ten to account for a stock split that had occurred two years before Mamie's will was executed. In 1995, as the result of a ten-for-one stock split, the 1,000 shares of MBI stock Mamie had received via the exchange in 1983 increased to 10,000 shares of MBI stock. Both BMC and MBI legally exist today, but all BMC stock is owned by MBI and none is publicly traded. To account for

the stock split, and to distribute Mamie's estate to the natural objects of her bounty as she intended, the trial court deemed it necessary to convert the BMC stock into MBI stock and then multiply it by ten. This meant that now 9,700 shares of MBI stock, as opposed to only the 970 shares specifically mentioned in the will, were to be distributed pursuant to Item II. Neal and Strunk disagreed with this interpretation, arguing that 9,030 shares should fall into the residual clause meaning Mamie's "dear friend" and her step-grandson by adoption, rather than her blood relatives, would share the bulk of her sizable estate.

Neal and Strunk argue the trial court's multiplication of the shares violates the polar star rule, especially since the stock split occurred in 1995, two years *before* the will was executed. However, Neal and Strunk minimize the fact that the stock conversion (which they agree was correctly applied) occurred in 1983, fourteen years *before* the will was executed. All agreed Mamie was bright, shrewd and well aware of the bank reorganization and the stock split as evidenced by her signature on documents and testimony about her business acumen. If it was permissible for the trial court to apply the 1983 stock conversion, it was equally permissible for the trial court to apply the 1995 stock split and multiply the shares.

 Because there was no longer any BMC stock within the estate, and everyone agreed the will's reference to it was an attempt to devise the MBI stock, there was no ademption. *See Goode*, 271 S.W. at 602. Furthermore, KRS 394.550(1) and (3) specify a legacy of stock includes "[a]ll stock split shares attributable to the devised shares" and "[a]ll shares of stock issued as a result of merger, consolidation, reorganization or other similar action, and attributable to the devised shares[.]" Neal and Strunk would have us read this statute

to apply only when a stock split or reorganization occurs *after* a will has been executed, but the legislature did not include a timing element in the statute and it is beyond our authority to add one in its absence. To determine the legislature's intent, we examine its precise statutory language without adding words that are not there, *Bohannon v. City of Louisville,* 193 Ky. 276, 235 S.W. 750, 752 (1921), or guessing what it might have intended to say but did not. *Lewis v. Creasey Corporation,* 198 Ky. 409, 248 S.W. 1046, 1048 (1923). Due to the will's latent ambiguity, interpretation was necessary. No error occurred.

## II. *IN TERROREM* CLAUSE NOT TRIGGERED BY FILING OF DECLARATORY JUDGMENT ACTION

▮ Neal and Strunk's second claim is that the filing of the declaratory judgment action required enforcement of Item VIII of the will—described as a "homegrown *in terrorem* " clause. In their view, no petitioner should inherit under the will.

As explained in *Commonwealth Bank & Trust Co. v. Young,* 361 S.W.3d 344, 352 (Ky.App.2012),

[a] no-contest clause provision in a will or trust "is referred to as an 'in terrorem clause' because its purpose is to strike fear into the heart of a beneficiary who might wish to consider contesting the provisions of the trust." *Johnson v. Smith,* 885 S.W.2d 944, 945–946 (Ky. 1994). The reasons for such a clause include the deceased's attempt to avoid costly legal expenses to the estate or trust, antagonism between beneficiaries, and the public exposure of private matters. Although enforceable in Kentucky, no-contest provisions are strictly construed and are not extended beyond

their express terms. *Hurley v. Blankenship,* 267 S.W.2d 99, 100 (Ky.1954). Here, the petition for declaratory judgment did not attempt to "annul or vacate any part of the will[.]" *Young,* 361 S.W.3d at 352. Its singular purpose was to interpret the will and establish how the estate should be distributed to carry out Mamie's intent. Such an action does not constitute a violation of a forfeiture clause. *Id.* (citations omitted).

Neal and Strunk argue actions other than petitioning for declaratory judgment perverted administration of the will and, therefore, violated the clause, such as Robert's moving the district court to appoint him as executor of the estate. In reviewing the motion to disqualify Neal as executrix, we noticed Robert did *not* ask to be named executor; he asked only that Neal be disqualified due to a conflict of interest and that she be replaced by a "disinterested third-party to serve with good and sufficient bond and corporate surety." It appears the district court *sua sponte* appointed Robert as co-executor. Thus, as the trial court correctly determined, enforcement of the *in terrorem* clause against the Lawson heirs, or against Robert specifically, was not required.

## III. AWARD OF COURT COSTS AND INTEREST TO PETITIONERS

▮ The parties agree the award of costs in an action to interpret a will is left to the sound discretion of the trial court. *Barth v. Citizens Fidelity Bank & Trust Co.,* 368 S.W.2d 339, 342–43 (Ky.1963); KRS 453.040(2). The Lawson heirs argue charging costs to Neal and Strunk is appropriate because doing otherwise places the financial burden of the litigation on the prevailing parties. This view is consistent with *Barth* in which it was determined the unsuccessful party should bear part of the

costs of litigation. To the contrary, Neal and Strunk argue it is unfair to place the burden on them because as co-executor, Neal had a responsibility to defend the will. We note that as the other co-executor, Robert had a similar duty to defend the will.

KRS 453.140 authorizes a trial court to assess costs against an executrix. It directs in relevant part, "A personal representative, guardian, assignee, curator, conservator or trustee in an action shall, if unsuccessful, be adjudged to pay costs as other litigants. . . ." Here, the trial court awarded petitioners $2,151.27 in costs to be paid by Neal and Strunk individually. In the grand scheme of this case, which in October of this year will eclipse a decade since Mamie's death, we have no reason to conclude the trial court abused its discretion in assessing costs against Neal and Strunk in their individual capacities.

 We reach a similar conclusion regarding the award of post-judgment interest. KRS 360.040 grants a prevailing party the right to recover post-judgment interest on a judgment at "twelve percent (12%) interest compounded annually from its date." The statute has been interpreted as requiring imposition of interest on a judgment unless factors make an award of interest inequitable. *Courtenay v. Wilhoit,* 655 S.W.2d 41, 42 (Ky.App.1983). The statute's purpose is to encourage a judgment debtor to promptly comply with the terms of the judgment and to compensate the judgment creditor for the judgment debtor's use of his money. *Stone v. Kentucky Insurance Guaranty Association,* 908 S.W.2d 675, 678 (Ky.App.1995).

Neal and Strunk argue the accrual of interest should have begun September 4, 2009, rather than June 12, 2009,[11] as ordered by the trial court. At first blush, we would agree that interest would not accrue from June until September 2009, even though both the original judgment and the amended version contained finality language. However, under *Stephens v. Stephens,* 300 Ky. 769, 190 S.W.2d 327 (1945), we must look at the difference in the two versions. If the differences are only minor, interest will begin accruing upon entry of the original judgment.

The original judgment (entered in June 2009) contained a few typographical errors in that Mamie was said to be "eights (80) years old" and it was stated that "immediately prior to the stock split in 1995, Mamie had only 1,00 shares of stock." These errors were corrected to reflect Mamie was "eighty (80) years old" and "immediately prior to the stock split in 1995, Mamie had only 1,000 shares of stock." Aside from some other punctuation changes, the only other noteworthy change was inclusion of the following sentence: "The Gail Stouse inheritance (1000) shares shall be used to pay estate taxes in accordance with the terms of the previously recognized codicil." None of the modifications reflected in the amended judgment changed the thrust of the original judgment. The result was unchanged and costs were still awarded to the petitioners. Under *Stephens,* post-judgment interest was properly awarded from the original judgment date of June 12, 2009.

## IV. SUPERSEDEAS BOND

 Finally, Neal and Strunk argue the trial court erred in ordering the posting of a supersedeas bond in *any* amount because probate of the will is pending before the district court, the assets of the

---

11. The original judgment was signed by the trial court on June 12, 2009. It was entered on June 16, 2009.

estate are already secured, and the stock will be distributed only upon approval of the district court. Additionally, they argue requiring bond in "the amount of $1,529,000.00 with good and sufficient corporate surety" was error because a monetary judgment was neither requested nor awarded, and the only amount ordered to be paid was costs of $2,151.27. We review a challenge to a supersedeas bond for an abuse of discretion. *Industrial Redistribution Center, Inc. v. Plastipak Packaging, Division of Beatrice Foods Company,* 706 S.W.2d 2, 3 (Ky.App.1986).

■ This issue does not arise from the declaratory judgment; rather it is addressed in a separate order and supplemental judgment also entered on September 4, 2009. When a party loses in the lower court, files a notice of appeal, and then asks the court to stay the proceeding pending appeal, the prevailing party may move the trial court to require posting of a supersedeas bond. *Berryman v. Ardery,* 398 S.W.2d 237, 238 (Ky.1966). All of the above happened in the declaratory judgment action and the trial court ordered the posting of a $1,529,000.00 bond representing "the approximate amount of stock proceeds awarded to the Petitioners (not counting the Gail Stouse interest and excluding sums awarded to Peggy Neal and Tim Strunk), plus costs, interest and damages for delay pending appeal, pursuant to CR 73.02."

■ Filing a supersedeas bond ensures a successful appellee is compensated for damages "which otherwise would not have been suffered but for the appeal." *Sotak v. Sotak,* 438 S.W.2d 490, 491 (Ky.1969). If the decision of the circuit court is affirmed or the appeal is dismissed, the bond ensures the appellee receives the compensatory damages awarded by the judgment and additional costs or damages, if proven.

At this point, only costs have been proved and awarded.

CR 73.04 governs the posting of a supersedeas bond. It reads:

(1) Whenever an appellant entitled thereto desires a stay on appeal, as provided in Rule 62.03, he may present to the clerk or the court for approval an executed supersedeas bond with good and sufficient surety. The address of the surety shall be shown on the bond. The bond shall be in a fixed amount and conditioned for the satisfaction of the judgment in full together with costs, interest and damages for delay, if the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, including costs on the appeal and interest as the appellate court may adjudge.

(2) When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, unless the trial court after notice and hearing and for good cause shown fixes a different amount or orders security other than the bond.

(3) When the judgment determines the disposition of the property in controversy as in real actions or replevin, or when such property is in the custody of the sheriff, or when the proceeds of such property or a bond for its value is in the custody or control of the court, the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay. A supersedeas bond may be given to stay proceedings on a part of a judgment, and in such case the

bond need only secure the part superseded.

CR 73.06 explains how to challenge a supersedeas bond. It reads:

(1) The sufficiency of the bond or the surety may be determined by the trial court upon motion and hearing.

(2) During an appeal, the trial court shall retain original jurisdiction to determine all matters relating to the right to file a supersedeas bond, the amount and sufficiency thereof and the surety thereon.

Petitioners did not respond to this claim in their brief to this Court. We could construe their lack of comment as a confession of error and reverse. *See* CR 76.12(8)(c)(iii). However, we choose not to take that drastic measure.

This case poses vexing nuances. First, there are two separate, but intimately intertwined actions, only one of which is being appealed and properly before us. The initial matter is a probate case filed in McCreary District Court where it remains a pending matter within the district court's exclusive jurisdiction. KRS 24A.120(2). To be clear, the probate case is *not* before us and that is where the assets of Mamie's estate reside. The other matter is a declaratory judgment action filed in McCreary Circuit Court, which we have consistently referred to throughout this Opinion as the trial court. Only the declaratory judgment action has been appealed to us.

Second, while the trial court's opinion determines how Mamie's estate will be distributed, it is without authority to make actual distributions. Stated otherwise, while the trial court dictates what will happen, it cannot make it happen—that must be done by the district court.

██ Third, little has been written on the topic of supersedeas bonds. As an appellate court, we lack authority to approve them, and are limited to granting leave to file a bond in the circumstances described in CR 73.06 or "to review the sufficiency of supersedeas bonds already filed in a pending appeal." *Henry Vogt Machine Company v. Scruggs,* 769 S.W.2d 766, 767 (Ky.App.1989). From the record provided to us, we cannot determine whether Neal and Strunk have posted bond. If they have, the bond set is clearly "sufficient," because it exceeds mightily the $2,151.27 assessed against Neal and Strunk as costs. Whether the bond amount was excessive appears to be beyond the scope of our authority to say.

As an aside, in reviewing the order and supplemental judgment, we notice the trial court has ordered two actions that appear to exceed circuit court jurisdiction, namely, directing closure of the estate and preparation and filing of an amended tax return. Neither party has raised this error and we comment no further than to say the district court has exclusive jurisdiction over probate matters.

For the foregoing reasons, the amended findings of fact, conclusions of law and declaratory judgment, as well as the order and supplemental judgment, all entered by the McCreary Circuit Court on September 4, 2009, are affirmed.

ALL CONCUR.