RENDERED: FEBRUARY 10, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1515-MR

CUMBERLAND SECURITY BANK,
INC.                                                                          APPELLANT


v.                          APPEAL FROM PULASKI CIRCUIT COURT
                            HONORABLE TERESA WHITAKER, JUDGE
                            ACTION NO. 18-CI-00235


FIRST SOUTHERN NATIONAL
BANK; AMY ERB; BURNSIDE,
KENTUCKY; CHERYL NICHOLS;
DANIEL ERB; DON NICHOLS; DON
NICHOLS, EXECUTOR OF THE
ESTATE OF CAROLE WOEHLER,
AKA CAROLE D. WOEHLER, AKA
CAROLE NICHOLS; FRAN
NICHOLS; KENNETH NICHOLS;
LARRY NICHOLS; MOLLY
NICHOLS; PULASKI COUNTY,
KENTUCKY; SOMERSET
DEVELOPMENT, LLC; SOMERSET,
KENTUCKY; STEVE NICHOLS; THE
NEIGHBORHOOD VILLAS
ASSOCIATION, INC.; AND YVONNE
NICHOLS                                                                        APPELLEES

<u>OPINION</u>
<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE: CALDWELL, DIXON, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: If a party is dissatisfied with a judgment and wishes to postpone execution of it during an appeal, the party may file a supersedeas bond. Here, a party did just that by posting a supersedeas bond which promised that the party would "satisfy the judgment together with interest, costs and damages for delay" if the judgment at issue were to be affirmed. But that appeal involved only a question about which of two mortgages had priority, not the underlying monetary judgment. It is uncontested that the party who posted the bond would otherwise not be liable for paying the monetary judgment. After we affirmed the trial court's decision about which mortgage had priority, the opposing party sought to satisfy the monetary judgment in its favor from the supersedeas bond. We hold that the trial court erred by refusing to do so.

## FACTUAL AND PROCEDURAL HISTORY

The most important underlying facts are not contested. Cumberland Security Bank, Inc. (Cumberland) and First Southern National Bank (First Southern) each had mortgages on the same land in Pulaski County. The banks disagreed about which mortgage had priority. The trial court ruled that Cumberland's mortgage had priority. In the same document, the trial court also

issued a default *in rem* judgment for the balance remaining on Cumberland's mortgage, plus interest, against the property and the estate and heirs of Cumberland's deceased borrower, Carole Woehler. First Southern was not required to pay that judgment. The trial court ordered the property to be sold.

Dissatisfied, First Southern appealed. To prevent the property from being sold while its appeal was pending, First Southern elected to file a supersedeas bond. The trial court approved that bond without requiring First Southern to have a surety. The bond, which exceeded the amount of the monetary judgment by over $50,000, stated in relevant part that First Southern would "satisfy the judgment together with interest, costs and damages for delay if for any reason . . . the judgment is affirmed . . . ." However, the only issue before us in First Southern's appeal was which mortgage had priority. In other words, First Southern posted a monetary bond promising to satisfy "the judgment together with interest, costs and damages for delay" for which it otherwise was not financially responsible.

We affirmed the trial court's conclusion that Cumberland's mortgage had priority. *First Southern National Bank v. Cumberland Security Bank, Inc.*, Nos. 2019-CA-0205-MR and 2019-CA-0206-MR, 2021 WL 4484954 (Ky. App. Oct. 1, 2021). After our opinion became final and the case returned to the trial court, Cumberland then filed two motions. First, it asked the court to order the

Master Commissioner to sell the property at issue.  Second, Cumberland asked to satisfy the monetary judgment from the supersedeas bond.  First Southern argued that it "does not owe Cumberland Security Bank any money" so the supersedeas bond cannot be used to pay the judgment.  In other words, First Southern contended that the reference to "the judgment" in its supersedeas bond did not cover the monetary portion of the underlying judgment.

The trial court issued a terse order, which contained neither findings nor citations to legal authority, denying Cumberland's motion to satisfy the judgment from the supersedeas bond.  Instead, the court ordered the bond to be released and the property sold.  The Master Commissioner quickly sold the property, but the proceeds were insufficient to satisfy Cumberland's judgment.  Cumberland then filed this appeal.  Cumberland named the persons and entities who have an interest in the property as appellees, but First Southern is the only appellee who has actively participated in this appeal.

## ANALYSIS

### *Standards of Review*

Our review is *de novo* because the core facts are undisputed, and this appeal presents questions of law.  *Revenue Cabinet v. Comcast Cablevision of South*, 147 S.W.3d 743, 747 (Ky. App. 2003).  Similarly, a supersedeas bond is generally deemed to be a contract, 5 C.J.S. *Appeal and Error* § 1202 (2023), and

we review the construction or interpretation of a contract *de novo*. *See, e.g.*, *Nelson v. Ecklar*, 588 S.W.3d 872, 878 (Ky. App. 2019*)*.

### *The Supersedeas Bond Applies to This Judgment*

"In the absence of ambiguity a written instrument will be strictly enforced according to its terms." *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965). Thus, even though "little has been written on the topic of supersedeas bonds[,]" *Strunk v. Lawson*, 447 S.W.3d 641, 652 (Ky. App. 2013), we must strictly enforce the terms of the bond at issue.

This bond was executed on a fill-in-the-blanks form provided by the Administrative Office of the Courts. The substantive language of the bond is:

> The Appellant [First Southern] having appealed from a judgment of this Court rendered on January 3 and January 18, 2019, for $67,872.59 and costs, we, First Southern National Bank, as principal, and _____, as surety, bind ourselves and our estates to Appellee [Cumberland] in the amount of $120,000.00 to satisfy the judgment together with interest, costs and damages for delay if for any reason the appeal is dismissed or the judgment is affirmed . . . .

Record ("R.") at 221. A representative of First Southern and the trial court signed the bond below the quoted language.

The plain language of the bond contains a promise by First Southern to "satisfy the judgment . . . if for any reason . . . the judgment is affirmed . . . ." *Id.* It is unquestioned that we affirmed the judgment. Thus, the only apparent

prerequisite to trigger First Southern's promise to "satisfy the judgment" was met. Indeed, the purpose of a supersedeas bond is to reassure the other party that the appealing party will satisfy a judgment if the appeal proves to be unsuccessful. 5 C.J.S. *Appeal and Error* § 1202 (2023) ("In essence, an appeal bond provides assurances that any remaining judgment, left standing following an appeal, will be satisfied."); *Wheeler v. Rea*, 306 S.W.2d 294, 296 (Ky. 1957) ("A supersedeas bond, by its terms, is a covenant to perform the judgment and to pay all damages and costs."). The promise in First Southern's bond should be strictly enforced.

We recognize that this case is unusual because First Southern promised to satisfy a judgment for which it otherwise was not responsible. But we conclude that unique factual twist does not alter the outcome of this case because it does not alter the plain language of the bond First Southern chose to post.

We are not persuaded by First Southern's argument that it only agreed to satisfy the non-monetary portions of the judgment because satisfying the non-monetary portion of the judgment, *i.e.*, the mortgage priority decision, did not require First Southern to do anything. Thus, accepting First Southern's argument that it only agreed to satisfy the non-monetary portions of the judgment would render illusory the straightforward language of the bond by which First Southern promised to "satisfy the judgment" if its appeal was unsuccessful because, under its theory, First Southern would not really have promised to do anything. Courts

-6-

must strive to give meaning to all words in a written agreement. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384-85 (Ky. App. 2002).

And the bond specifically referred to a judgment in the amount of $67,872.59. So, by posting a bond which contains a promise to "satisfy" the judgment *and to pay interest and recoverable costs and fees*, First Southern logically agreed to pay the monetary judgment. After all, what interest would be owed on a nonmonetary judgment which only assessed the priority of mortgages?

We also stress that First Southern voluntarily chose to file a supersedeas bond. As our Supreme Court has held, "[a] party, however, does not need to post a supersedeas bond to take an appeal from a judgment." *Elk Horn Coal Corp. v. Cheyenne Resources, Inc.*, 163 S.W.3d 408, 419-20 (Ky. 2005), *overruled on other grounds by Calloway Cnty. Sheriff's Department v. Woodall*, 607 S.W.3d 557 (Ky. 2020). First Southern chose to file a monetary supersedeas bond, thereby obligating itself to "perform the judgment and to pay all [properly recoverable] damages and costs." *Wheeler*, 306 S.W.2d at 296. If First Southern did not want to have to pay the judgment, it should not have filed the bond.

Thus, we reject First Southern's argument that enforcing the terms of the bond penalizes it for choosing to file an appeal. Instead, enforcing the terms of the bond is a mere recognition of the inherent consequences stemming from First Southern's choice to file a supersedeas bond when taking that appeal. In sum, we

reject First Southern's argument that it would be unfair to require it to honor its voluntary promise.

First Southern argues its bond cannot be used to satisfy an *in rem* judgment. But First Southern cites no authority to support that contention. The fact that the judgment at issue was at least partially *in rem* does not change the structure and mechanisms governing supersedeas bonds in general, or the specific promissory language in this bond by which First Southern pledged to satisfy the same *in rem* judgment it now claims that it should not have to satisfy.

We also reject First Southern's argument that Cumberland suffered no damages. If First Southern had not posted the supersedeas bond, Cumberland could have sought to execute on the judgment and would thus have received the proceeds from the sale of the property immediately. The posting of the bond delayed the Master Commissioner's sale for over two years. A party is harmed by incurring a lengthy delay in receiving funds to which it is legally entitled.

Finally, we vigorously disagree with First Southern's odd argument that its bond cannot be used to pay the judgment because Cumberland was not victorious in the first appeal. To the contrary, it is beyond rational debate that Cumberland was completely victorious in the first appeal since we affirmed the trial court's decision that Cumberland's mortgage had priority over that of First Southern – the only substantive issue we were asked to address.

Because its brief is not crystal clear, it is possible that First Southern is attempting to argue that Cumberland has to prevail on this appeal for the judgment to be satisfied from the bond. The plain language of the supersedeas bond shows that it obligated First Southern to pay the judgment if it were affirmed. It was. The judgment itself is not at issue in this appeal and nothing in the bond requires Cumberland to prevail in a second appeal before the promise to satisfy the judgment becomes effective. And, in any event, Cumberland is prevailing here.

In short, First Southern must comply with the plain language contained in the supersedeas bond it voluntarily elected to post. That plain language's reference to the "judgment" encompasses the monetary judgment, not just the nonmonetary judgment. Thus, the trial court erred by denying Cumberland's motion to satisfy the judgment from the supersedeas bond funds.[1]

### *Attorney Fees Are Not Recoverable*

Having determined that the bond may be used to pay the monetary judgment, we briefly address what costs and fees Cumberland may recover from the bond. Obviously, the amount of the monetary judgment, applicable interest

---

[1] Our conclusion is not changed by the fact that Cumberland also filed a motion to have the property sold by the Master Commissioner. The two motions are potentially contradictory, but they could have worked together. For example, Cumberland could have been made whole from the supersedeas bond and then First Southern, pursuant to its mortgage, could have received funds from the Master Commissioner's sale. In any event, pleading in the alternative is generally permissible, *see, e.g.*, *Roach v. Hughes*, 419 S.W.3d 46, 49 (Ky. App. 2013), and First Southern has not shown that Cumberland's motion to have the property sold rendered null or otherwise inherently defeated the motion to satisfy the judgment from the supersedeas bond.

thereon, and costs may be paid from the bond. The trial court shall calculate those amounts on remand. The court should also determine what additional "damages for delay[,]" if any, Cumberland should recover.

Those calculations are for the trial court to consider on the back end of this dispute. The main disagreement we must resolve on the front end is whether Cumberland is entitled to receive attorney fees. The answer is no.

First, though not discussed by the parties, precedent holds that attorney fees generally are not recoverable from supersedeas bonds. *See, e.g.*, *Combs v. Combs*, 304 Ky. 271, 200 S.W.2d 481, 483 (1947) ("It is a firmly established rule that a fee allowed for an attorney's services on appeal does not constitute an element of damage in an action on the supersedeas bond."); *Dowling's Adm'x v. Walker*, 120 Ky. 528, 87 S.W. 281, 282 (1905) ("The covenant of a supersedeas bond does not cover an attorney's fee, as a part of the costs."). And this bond does not contain language which contravenes that general rule. Second, Cumberland has not shown that it has a separate statutory, or other non-contractual right, to recover attorney fees from First Southern. *See, e.g.*, *Bell v. Commonwealth, Cabinet for Health and Family Services, Dep't for Community Based Services*, 423 S.W.3d 742, 748 (Ky. 2014) (holding that "attorney's fees in Kentucky are not awarded as costs to the prevailing party unless there is a statute permitting it or as a term of a contractual agreement between the parties").

Third, we reject Cumberland's strained argument that it is entitled to recover attorney fees from First Southern by virtue of language in the promissory note executed by Woehler. That argument is fatally flawed because First Southern is a stranger to that contract. *See, e.g.*, *Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 821 (Ky. 2019) (noting that a promissory note is an enforceable contract which is independent of a mortgage).

Paragraph 16 of the promissory note at issue provides as follows:

> On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees as provided by law, and court costs.

The promissory note defines "*I*" as the "Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers and sureties) who agrees to pay this Note." The note defines "*your*" as "the Lender . . . ."

First Southern does not fit within the definition of the borrower or the lender. Instead, the borrower was Woehler (now, her estate and heirs) and Cumberland was the lender. First Southern was neither the borrower nor the lender. The only apparent relationship First Southern had with Woehler was the indirect happenstance that she sold property to a buyer who apparently borrowed

-11-

money from First Southern to make that purchase. That attenuated relationship cannot be used to hold First Southern responsible for Woehler's debts.

In short, Cumberland and Woehler had a contractual relationship with each other; neither had one with First Southern. Cumberland has not shown that the promise by First Southern in its supersedeas bond to satisfy the judgment somehow also includes a promise to assume responsibility for Woehler's obligation to pay attorney fees to Cumberland under a separate promissory note.

In short, First Southern cannot be bound by the terms of a contract to which it has no relationship. *See, e.g.*, *Harlan Public Service Co. v. Eastern Const. Co.*, 254 Ky. 135, 71 S.W.2d 24, 29 (1934) ("one cannot be bound by a contract to which he was not a party"); *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (internal quotation marks, footnotes, and citations omitted) ("Privity of contract is [t]he relationship between parties to a contract, allowing them to sue each other but preventing a third party from doing so. Thus, [o]rdinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except under a real party in interest statute or, under certain circumstances, by a third-party beneficiary.").

Where does that leave us? The trial court erred by concluding that First Southern was not liable for the monetary judgment. However, the property at

-12-

issue has been sold and the supersedeas bond released. Therefore, the case must be remanded for the trial court to calculate the remaining amount owed to Cumberland (the difference between the funds received by Cumberland after the Master Commissioner's sale and the amount of the judgment, plus interest and all properly recoverable costs and damages for delay – which shall not include attorney fees). Thereafter, the court shall enter a judgment in favor of Cumberland against First Southern for that amount. Because the trial court unfortunately ordered the supersedeas bond to be released, First Southern will have to tender separately to Cumberland the amount of the forthcoming judgment.[2]

## CONCLUSION

For the foregoing reasons, the Pulaski Circuit Court is affirmed in part, reversed in part, and this matter is remanded with instructions for proceedings consistent with this Opinion.

ALL CONCUR.

---

[2] As we do not provide advisory opinions, we decline to address any potential causes of action any of the parties may have, such as whether Cumberland may seek to recover attorney fees from Woehler's estate or heirs. Also, we have considered all the arguments in the parties' briefs but have discussed only those we deem necessary to resolve properly this appeal.

BRIEFS FOR APPELLANT:

Sarah Tipton Reeves
Jeffrey R. Tipton
Corbin, Kentucky

BRIEF FOR APPELLEE FIRST
SOUTHERN NATIONAL BANK:

Ashley D. Gerughty
Stephanie McGehee-Shacklette
Bowling Green, Kentucky